Dessie Ford **MILLER** IV, Appellant,

v.

**STATE of Alaska, Appellee.**

Nos. A–10891.

Court of Appeals of Alaska.

Nov. 22, 2013.

Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and SMITH, Superior Court Judge.*

*OPINION*

Judge MANNHEIMER.

Dessie Ford Miller IV was charged with one count of second-degree assault and one count of fourth-degree assault for attacking Ida Stricker, a woman who was visiting his boat. The second-degree assault charge was based on the allegation that Miller strangled Stricker with his hands, and the fourth-degree assault charge was based on the allegation that Miller inflicted injuries to Stricker—scrape marks on her back—when he pushed her against the wall to strangle her.

According to Stricker, she lost consciousness while Miller was strangling her. When she regained awareness, she was lying on the floor, and Miller was standing over her with his foot on her chest. Miller removed his foot, and Stricker got up, gathered her belongings, and left Miller's boat.

At trial, the jury acquitted Miller of second-degree assault (the strangulation allega-

tion), but the jury convicted Miller of fourth-degree assault (the allegation that he inflicted scrape marks on Stricker's back).

In this appeal, Miller contends that the jury's verdicts are inconsistent. He also contends that the superior court committed error by classifying his fourth-degree assault conviction as a "crime of domestic violence". Finally, Miller contends that the superior court should not have ordered him to pay restitution for medical expenses arising from emergency room treatment that the victim received several days after the assault.

For the reasons explained in this opinion, we conclude that Miller forfeited his right to attack the verdicts as being inconsistent, because he did not raise this issue in the superior court before the jury was discharged. We further conclude that the superior court violated Alaska Criminal Rule 32(e) by classifying Miller's offense as a "crime of domestic violence" without making an express ruling on this issue—and we direct the superior court to reconsider this matter. Finally, we conclude that the restitution order was appropriate, given the superior court's express finding that Miller's assault caused the medical condition for which the victim was treated.

*Miller's argument that the jury's decision to convict him of fourth-degree assault is logically inconsistent with the jury's decision to acquit him of second-degree assault*

In his brief to this Court, Miller argues that there was "insufficient evidence" to support his conviction for fourth-degree assault (the allegation that Miller inflicted the scrape marks on Stricker's back).

[1] However, the gist of Miller's argument is *not* a claim that the evidence presented at his trial was legally insufficient to support his conviction. Indeed, the evidence clearly *was* sufficient—because the victim, Stricker, testified that she sustained the injuries to her back when Miller pushed her against the wall. This testimony, if believed,

---

* Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

was sufficient to warrant the fourth-degree assault conviction.

Miller's real argument (as clarified by the text of his brief) is that the jury's decision to convict him of fourth-degree assault is logically inconsistent with its decision to acquit him of second-degree assault.

According to Miller, his alleged act of strangling Stricker was part and parcel of the same event that allegedly caused the injuries to Stricker's back. In support of this characterization of the evidence, Miller quotes a portion of the prosecutor's argument to the jury:

> *Prosecutor:* [The charge of] assault II [refers] to the [act of] strangulation against the wall. The [charge of] assault IV [refers] to the wounds to [Stricker's] back that occurred while she was being pushed up against the wall. It's obvious it came from a single course of conduct.... Both of [these offenses] happened at the same time, essentially, or within moments of each other.

Thus, Miller contends, the jury could not logically acquit him of strangling Stricker but at the same time convict him of inflicting the scrape marks on her back.

[2]   Miller did not raise the issue of inconsistent verdicts in the superior court. Because of this, we conclude that he forfeited this issue.

[3, 4]   The Alaska Supreme Court has declared that logically inconsistent verdicts can be attacked on appeal as "plain error".[1] But under Alaska law, a litigant who advances a claim of plain error must show that they had no tactical reason for failing to make a contemporaneous objection to the asserted error.[2]

This Court has previously noted—in *Edwards v. State*, 158 P.3d 847, 857 (Alaska App.2007), and in *Hansen v. State*, 845 P.2d 449, 454–55 (Alaska App.1993)—that a de-

fense attorney who believes that the jury's verdicts may be inconsistent has a powerful tactical reason to withhold any objection until the trial judge accepts the verdicts and discharges the jury. If the attorney alerts the trial judge to the problem, the trial judge would normally advise the jurors that their verdicts are inconsistent and can not be accepted, and the judge would then direct the jurors to return to their deliberations—leaving open the possibility that the jurors would resolve the inconsistency in the State's favor. Or, in a case like Miller's, a timely objection might prompt the trial judge to ask the jury to clarify the basis of its decision by means of a special verdict.

Instead, by withholding an objection until the jury is discharged and the matter is beyond remedy, a defense attorney gains a new trial on any charges of which the defendant was convicted, while at the same time precluding a new trial on any charges of which the defendant was acquitted (because of Alaska's guarantee against double jeopardy).[3]

Under these circumstances, a claim of plain error must fail. We accordingly reject Miller's claim that the jury's verdicts are inconsistent.

*The superior court's designation of Miller's assault on Stricker as a crime of domestic violence*

When the State filed the charges against Miller, it alleged that both offenses were "crimes of domestic violence" as defined in AS 18.66.990(3) and (5). Miller never challenged this allegation. Indeed, at the sentencing hearing, the parties and the superior court openly discussed the fact that, because Miller's offense was a crime of domestic violence and because Miller had a prior conviction for assault, he faced a minimum sentence of 30 days' imprisonment under AS 12.55.135(g).[4] The defense attorney never

---

1.  *DeSacia v. State*, 469 P.2d 369, 373 (Alaska 1970).

2.  *Jackson v. American Equity Insurance Co.*, 90 P.3d 136, 144 (Alaska 2004); *Henry v. State*, 861 P.2d 582, 589 (Alaska App.1993); *Massey v. State*, 771 P.2d 448, 453 (Alaska App.1989);

*Potts v. State*, 712 P.2d 385, 394 n. 11 (Alaska App.1985).

3.  *DeSacia v. State*, 469 P.2d 369, 378–79 (Alaska 1970).

4.  AS 12.55.135(g) reads: "A defendant convicted of assault in the fourth degree that is a crime

voiced any objection to this characterization of the situation. When the superior court issued its written judgement, the court labeled the fourth-degree assault conviction a crime of "domestic violence".

Now, on appeal, Miller argues that the superior court committed error by designating his fourth-degree assault conviction a "crime of domestic violence", and by sentencing him under the mandatory minimum sentencing provisions of AS 12.55.135(g).

The State argues that, because Miller failed to object to the "domestic violence" designation of his offense during the sentencing proceedings, he should not be allowed to attack that designation now. The State further argues that even if it was error for the superior court to sentence Miller under the mandatory minimum sentencing provisions of AS 12.55.135(g), that error was harmless—because even Miller's attorney conceded, based on Miller's criminal history, that Miller's sentence should substantially exceed the 30–day minimum specified in the statute.

[5] Miller's failure to object to the "domestic violence" designation in the superior court does not mean that he has forfeited any objection on appeal, but it does mean that he must show plain error.

[6] Here, the superior court committed an obvious error. Alaska Criminal Rule 32(e) declares that when the government asserts that a defendant's offense is a crime of domestic violence, the sentencing court is required to make "[a] factual and legal determination supporting this [characterization of the offense] ... on the record." In Miller's case, the superior court did not make any such ruling on the record; there are no findings of fact or rulings of law regarding the State's assertion that Miller's offense constituted a crime of domestic violence.

Given the adverse consequences of the "domestic violence" designation for Miller, there appears to be no tactical reason why his attorney would withhold an objection. The only remaining question is whether the superior court's failure to expressly rule on this issue was manifestly prejudicial to the fairness of the proceedings.

[7] The State essentially concedes that the current record does not affirmatively establish that Miller's assault on Stricker constituted a crime of domestic violence as defined in AS 18.66.990(3) and (5). True, the State presented evidence that, just before the assault, Miller engaged in an act of consensual sexual penetration with Stricker. But this one sexual encounter would not make their relationship a "sexual relationship" within the meaning of AS 18.66.990(5)(D). *See Bates v. State*, 258 P.3d 851, 859–863 (Alaska App.2011), and *Leu v. State*, 251 P.3d 363, 369 (Alaska App.2011). And there is no evidence that Miller's relationship with Stricker fell within any other provision of AS 18.66.990(5).

[8] It was the State's burden to prove its allegation that Miller's offense was a crime of domestic violence as defined in AS 18.66.990(3) and (5). It was the superior court's obligation to make an express ruling on the State's allegation. The superior court failed to make the required ruling, and the superior court's omission can not be viewed as harmless, because the record of the proceedings does not clearly establish the truth of the State's assertion that Miller's offense was a crime of domestic violence.

For these reasons, we conclude that Miller has shown plain error. We therefore vacate the superior court's designation of Miller's offense as a crime of domestic violence, and we direct the superior court to reconsider this issue.

*The restitution order*

As we explained in the introductory section of this opinion, Stricker testified that she lost consciousness while Miller was strangling her. When she regained awareness, she was lying on the floor, and Miller was standing

---

involving domestic violence shall be sentenced to a minimum term of imprisonment of

   (1) 30 days if the defendant has been previously convicted of a crime against a person or a crime involving domestic violence; [and]

   (2) 60 days if the defendant has been previously convicted two or more times of a crime against a person or a crime involving domestic violence, or a combination of those crimes."

over her with his foot on her chest. Stricker testified that Miller caused injury to her chest when he stepped on her.

The State asked the superior court to order Miller to pay restitution of nearly $1000 to the State (more specifically, to the Division of Health Care Services), to cover the expenses arising from medical treatment that Stricker received at the emergency room nine days after the assault. According to Stricker's testimony, and as found by the superior court, Stricker went to the emergency room because she was experiencing chest pain and problems breathing.

Miller opposed the State's proposed restitution order, arguing that the State had not proved that Stricker's medical difficulties arose from Miller's assault. Following a hearing, the superior court concluded that Stricker's chest pain "was proximately caused by Mr. Miller's conduct ... during the incident which resulted in the charges in this case".

Specifically, the superior court concluded—based on Stricker's trial testimony, and also based on the testimony of a police officer who observed bruising on Stricker's upper chest immediately following the assault—that Miller stepped on Stricker's chest while she was lying on the floor of the boat, and that Stricker's later chest pain was due to Miller's action.

On appeal, Miller argues that the superior court's restitution order is improper because it exceeded the court's authority under AS 12.55.045, the statute governing restitution. More particularly, Miller argues that even if he caused the injuries to Stricker's chest, those injuries were not part of the "offense" that he was convicted of.

Miller argues that, even though the State viewed Miller's assault on Stricker as one continuous criminal act, the State nevertheless chose to file separate counts based on separate aspects of this assault: one count of second-degree assault for Miller's alleged strangulation of Stricker, and one count of fourth-degree assault for injuring Stricker's back when he forced her against the wall.

Miller notes that the State never charged him with a separate count for standing on Stricker's chest. Based on the absence of such a count, Miller asserts that his assault conviction is limited to the injuries inflicted to Stricker's back. Thus, Miller argues, even if he inflicted injuries to Stricker's chest during the same assaultive act, it was error for the superior court to order him to pay restitution for those injuries.

[9] We disagree with Miller's analysis. Under Alaska law, even when a single assaultive act comprises two or more separate components, the assaultive act will normally be treated as one offense. For instance, in *Mill v. State*, 585 P.2d 546 (Alaska 1978), the defendant assaulted the victim by (1) pointing a rifle at the victim through a cabin window and ordering him to come outside, then (2) shooting the victim in the leg, and then (3) standing over the victim and threatening him with the rifle until the victim wrote the defendant a check. The supreme court held that this conduct amounted to only one armed assault. *Id.* at 551–52.

The supreme court further declared in *Mill* that, as a general matter, "[i]n marginal cases[,] doubts should be resolved against turning a single transaction into multiple offenses." *Id.* at 552 n. 4. Thus, in *McGee v. State*, 162 P.3d 1251 (Alaska 2007), the supreme court held that the defendant's act of breaking several windows of the same vehicle constituted only a single offense of malicious destruction of property:

McGee ... was convicted for engaging in a brief course of conduct involving several discrete but closely connected acts of [malicious] destruction. This court has declined to parse conduct of this kind as though it involved multiple crimes, holding instead that "[w]e view [such] events as a series of acts, in a short and continuous sequence, which amount to a unitary criminal episode." *Mill v. State*, 585 P.2d 546, 552 (Alaska 1978); *cf.* AS 11.46.980(c) (requiring aggregation of property damage for purposes of determining classification of a property crime that involves multiple "criminal acts committed under one course of conduct").

*McGee*, 162 P.3d at 1262 n. 54.

This is not to say that it was improper for the State to *charge* Miller separately for

various aspects of his assault on Stricker, especially when one aspect of that assault (the strangulation) constituted a higher degree of crime—second-degree assault. But had the jury found Miller guilty of both the second-degree assault charge and the fourth-degree assault charge, these verdicts would have supported only a single conviction.

[10] As we explained in *Garhart v. State*, 147 P.3d 746, 752–53 (Alaska App.2006):

> [W]hen the counts of the defendant's indictment charge separate theories of the same crime, or when the counts of the indictment charge separate crimes that will ultimately be treated as the "same crime" under the rule announced in *Whitton v. State*, [479 P.2d 302 (Alaska 1970),] Alaska law allows the government to seek a jury verdict on each count. The double jeopardy clause comes into operation later, when the sentencing court is asked to enter judgement on those verdicts. At that time, the court must merge one or more of the verdicts so that the defendant receives only the number of convictions and sentences allowed by [law].

(Citing *Gilbert v. State*, 598 P.2d 87, 91 (Alaska 1979); *Robinson v. State*, 487 P.2d 681, 682 (Alaska 1971); and *Atkinson v. State*, 869 P.2d 486, 495 (Alaska App.1994).)

[11] Given the testimony in Miller's case, the superior court could properly conclude that Miller committed a single, continuous assault on Stricker—and that Miller's offense included both the act of pushing Stricker against the wall and the act of stepping on her chest as she lay on the floor. It was therefore proper for the superior court to order Miller to pay restitution for the emergency room treatment that Stricker received for her chest injuries.

*Conclusion*

With the exception of the superior court's classification of Miller's offense as a crime of domestic violence, the judgement of the superior court is AFFIRMED. With respect to the classification of Miller's offense as a crime of domestic violence, this portion of the superior court's judgement is VACATED, and the superior court is directed to redetermine this matter in conformity with Criminal Rule 32(e).