Colorado Court of Appeals Opinions || February 25, 2016

Colorado Court of Appeals -- February 25, 2016
2016 COA 24. No. 13CA0392. People v. Rail.

  

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 24

 
 

  

 Court of Appeals No. 13CA0392
 Adams County District Court No. 11CR2832
 Honorable Thomas R. Ensor, Judge 

 The People of the State of Colorado, 

 Plaintiff-Appellee,

 v.

 Paul Lacey Rail,

 Defendant-Appellant.

  

  JUDGMENT AFFIRMED

 Division III
 Opinion by JUDGE WEBB
 Booras, J., concurs
 J. Jones, J., specially concurs

 Announced February 25, 2016

  

 Cynthia H. Coffman, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

 
  

 ¶1         A jury convicted Paul Lacey Rail of sexual assault on a child (SAOC) and answered a special interrogatory finding a pattern of abuse, but acquitted him of sexual assault on a child-position of trust (SAOC-POT). Rail appeals, primarily contending that under Sanchez v. People, 2014 CO 29, inconsistencies between the jury’s answers to the special interrogatory on pattern and the special interrogatory on unanimity constitute structural error mandating reversal.

 ¶2         Because we conclude that Sanchez is distinguishable and other precedent does not support applying structural error, we reject this contention. As to any other relief based on the inconsistent interrogatory answers, we address a novel question in Colorado and further conclude that Rail waived appellate review by declining the trial court’s offer of further polling after the court polled the jury on the SAOC guilty verdict and the pattern interrogatory answers. We reject his other contentions and therefore affirm.

 I. Background

 ¶3         B.H. testified that beginning when she was about five years old, Rail would show her sexually explicit photos and then subject her to sexual contact. Although the abuse continued over several years, her first outcry was at age seventeen. B.H. testified to roughly twenty-five incidents over several years, some of which were “mushed together.” Many of these incidents occurred in the basement of B.H.’s great-grandmother’s house, where Rail lived at the time. She provided the most details about the “worst” incident, which had occurred at an Embassy Suites hotel when she was about thirteen years old.[1]

 II. Inconsistent Answers to Special Interrogatories

 ¶4         Rail contends his convictions for SAOC and the pattern enhancer cannot stand because the jury’s answers to the unanimity and pattern interrogatories conflicted with each other and with the guilty verdict on the SAOC charge, thus constituting structural error. We reject this contention.

 A. Additional Background

 ¶5         The jury received separate verdict forms for both the SAOC and the SAOC-POT charges. The jury was also instructed:

 If . . . you do find the defendant guilty of either [SAOC] or [SAOC-POT] as it relates to [B.H.], then you must specify which act or acts of sexual assault you found to have been proved beyond a reasonable doubt.

 Furthermore, if you find the defendant guilty of [SAOC], then you must also answer the following question:

 “Did the defendant commit [SAOC] as a pattern of sexual abuse?”

 This instruction then defined “pattern of abuse” and concluded:

 In order to find that there was a “pattern of sexual abuse” you must find, beyond a reasonable doubt, by unanimous vote, that the defendant committed the same two or more acts of sexual contact on [B.H.] or that he committed all of the acts of sexual contact as testified to by [B.H.]

 ¶6         The jury received a special unanimity interrogatory, which instructed the jurors to complete the interrogatory “if you find the defendant guilty of either [SAOC] OR [SAOC-POT].” It then listed four alleged incidents of abuse regarding B.H. Next to each incident, the jury was to indicate whether the incident was “[p]roved” or “[n]ot [p]roved” beyond a reasonable doubt. Although the jury found Rail guilty of SAOC, on the unanimity interrogatory it marked all four incidents of alleged abuse as “[n]ot [p]roved.”

 ¶7         The other special interrogatory — relating to the pattern enhancer and to be completed only if the jury found Rail guilty of SAOC — asked whether “the defendant commit[ed] [SAOC] as a pattern of sexual abuse[.]” It then listed five alleged incidents of abuse regarding B.H., the four incidents listed on the unanimity interrogatory that the jury had marked not proved plus the Embassy Suites incident. But this time, the jury marked all five alleged incidents “[p]roved.”

 ¶8         The trial court announced the two general verdicts, read each incident of alleged abuse on the pattern interrogatory, and indicated that each incident was proved. Then the court polled the jury by asking, “were these and are these your verdicts?” Each juror answered affirmatively. Finally, the court asked whether “either counsel wish[ed] the jury to be polled any further.” Both the prosecutor and defense counsel responded, “No.”

 ¶9         But the partial polling left two inconsistencies unresolved. First, on the SAOC general verdict form, the jury found Rail guilty, while the jury indicated on the unanimity interrogatory that none of the four incidents had been proved. Second, the jury’s answers to the unanimity interrogatory marked the four incidents as not proved, but on the pattern interrogatory, it marked those same four incidents as proved.

 ¶10         Even so, Rail’s counsel did not object to either of these inconsistencies when the court announced the verdicts, excused the jury, and entered judgment of conviction for SAOC with the pattern enhancer as to B.H. Nor did his counsel raise either of them at sentencing on SAOC with the pattern enhancer three months later.

 B. Structural Error

 ¶11         Rail and the Attorney General disagree over applying structural error. In declining to do so, we first distinguish Sanchez. Then we consider other precedent and discern no basis for applying structural error.

 1. Sanchez v. People

 ¶12         Relying solely on Sanchez, Rail argues that entering a conviction on the SAOC charge — despite the unanimity interrogatory answers that none of the four incidents had been proved — constitutes structural error. See People v. Hassen, 2015 CO 49, ¶7 (describing structural errors as errors that “affect the framework within which the trial proceeds, and are not errors in the trial process itself[,]” and which require reversal) (citation omitted). Rail’s reliance on Sanchez and our obligation to follow supreme court authority require that it be examined in detail.

 ¶13         In Sanchez, the defendant was convicted of, among other offenses, SAOC and sentenced based on the pattern enhancer. Sanchez, ¶¶1, 8. Although the jury returned a not guilty verdict on SAOC, the jury completed the pattern verdict form in favor of the prosecution. Id. at ¶8. The trial court entered judgment of conviction on SAOC with the pattern sentence enhancer, apparently based on this verdict form. Id.

 ¶14         Before the supreme court, the Attorney General argued that the SAOC conviction should be affirmed based on this verdict form. Id. at ¶17. The supreme court disagreed. Id. at ¶¶19-20.

 ¶15         An interrogatory pertaining to “pattern of abuse” explained that the prosecution had the burden of proving the pattern of abuse beyond a reasonable doubt. Id. at ¶6. But the jury was not instructed that the pattern charge “was to be understood as merely adding an additional pattern-of-abuse condition to the existing elements of the crime of sexual assault on a child, as to which the jury had already been instructed.” Id. at ¶16.

 ¶16         The Sanchez jury was also instructed to complete a pattern verdict form “if, but only if, it were to find the defendant guilty of [SAOC.]” Id. at ¶7. As here, the pattern verdict form listed multiple “specific incidents” of alleged sexual contact with a box next to each, and the jury was instructed to mark the box for any incidents that the jury unanimously agreed had been proved. Id. But despite having found the defendant not guilty of SAOC, the jury completed the pattern enhancer verdict form anyway, marking two incidents as proved. Id. at ¶8.

 ¶17         The supreme court reversed this conviction, explaining that it rested on “nothing more than factual findings of two incidents of sexual contact against the same victim.” Id. at ¶13. The court added that the pattern verdict form did not constitute a unanimous jury verdict because the jury was not instructed that proof of pattern required the elements of SAOC to have been proved. Id. at ¶¶15-16. And the court concluded that entering judgment of conviction which was “not supported by a unanimous verdict beyond a reasonable doubt” amounted to structural error. Id. at ¶¶14, 19.

 ¶18         We decline Rail’s invitation to apply this structural error analysis because in his case, and unlike in Sanchez, the jury returned a guilty verdict on SAOC and found that the pattern enhancer had been proved. When polled, the jury in Rail’s case affirmed the “verdicts.” In contrast, neither the unpublished court of appeals opinion nor the supreme court opinion in Sanchez references any polling.

 ¶19         Of course, we must assess the significance of the inconsistency between the unanimity interrogatory answers and the pattern interrogatory answers. But Sanchez does not inform that inquiry because the reversal in that case rested on lack of a guilty verdict. Even so, because our supreme court has not held structural error to be waivable in all circumstances or in the circumstances presented here,[2] we consider whether structural error should be applied for any other reason. We conclude that it should not.

 2. Inconsistent Verdicts and Structural Error

 ¶20         To be sure, the jury’s answers to the special interrogatories were inconsistent. But the parties do not cite a similar Colorado case, nor have we found one.

 ¶21         One might wonder whether this inconsistency could be compared to an inconsistent verdicts case in which a defendant is convicted of two or more crimes, but “an element of one crime negates an element of another crime[.]” People v. Zweygardt, 2012 COA 119, ¶30 (quoting People v. Beatty, 80 P.3d 847, 852 (Colo. App. 2003)). Such verdicts are deemed “legally and logically inconsistent” and must be reversed. Id. (quoting Beatty, 80 P.3d at 852). Again, Rail cites no Colorado cases, and we cannot find one, treating inconsistent verdicts arising from multiple convictions as structural error.[3]

 ¶22         “With no Colorado case directly on point, we look to the decisions of other jurisdictions for persuasive guidance.” P.W. v. Children’s Hosp. Colo., 2016 CO 6, ¶23. But such authority is similarly scant. See State v. Inman, No. 13CA0074-M, 2014 WL 4057720, at *3 n.1 (Ohio Ct. App. Aug. 18, 2014) (“Mr. Inman argues that this Court should review his argument for either plain or structural error. He fails, however to . . . cite to any supporting authority which demonstrates that inconsistent jury verdicts constitute a structural error.”). And in United States v. Moran-Toala, 726 F.3d 334, 342-44 (2d Cir. 2013), the court rejected the defendant’s structural error challenge to a jury instruction that allowed the jury to return inconsistent verdicts.

 ¶23         Returning to Colorado precedent, however, a closer look reveals two analogous lines of authority. Both weigh against applying structural error.

 ¶24         First, at least one division of this court has reviewed inconsistent verdicts for plain error. See People v. Sanchez, 253 P.3d 1260, 1262-63 (Colo. App. 2010).[4] This approach impliedly rejects structural error because where structural error exists, reversal is automatic, and further inquiry is unnecessary. Hassen, ¶7 (noting that structural errors “require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction”) (citation omitted).

 ¶25         Second, Colorado cases impliedly reject structural error analysis of failure to give a unanimity instruction by applying a lower standard to determine reversal. See Thomas v. People, 803 P.2d 144, 154 (Colo. 1990) (reviewing for constitutional harmless error); People v. Villarreal, 131 P.3d 1119, 1128-29 (Colo. App. 2005) (failure to give a unanimity instruction was harmless beyond a reasonable doubt).[5] If failure to give a unanimity instruction is not structural error, why would interrogatory answers suggesting disunanimity be?

 ¶26         For these reasons, we decline to hold that the inconsistent interrogatory answers constitute structural error.

 C. Waiver

 ¶27         The Attorney General argues that Rail waived his inconsistency claim by failing to raise it before the trial court released the jury. Alternatively, the Attorney General suggests that “plain error applies in the event that any error occurred.” Rail’s reply brief devotes only two paragraphs to standard of review and standard of reversal. It distinguishes the Attorney General’s waiver authority — limited to a federal circuit civil case — and responds to the plain error argument only by reasserting that under the supreme court’s decision in Sanchez, structural error occurred.

 ¶28         Having concluded on the facts before us that Sanchez is not controlling, we consider plain error first because one court of appeals division has reviewed inconsistent verdicts for plain error, another division has applied plain error to an irregularity in polling the jury, and doing so would afford Rail limited appellate consideration of his claim. Then, based on more recent court of appeals cases and a Colorado statute, we conclude that because Rail waived this claim, it is not subject to plain error review.

 1. Law

 ¶29         Recall the court of appeals’ decision in Sanchez, 253 P.3d at 1262-63 — a case unrelated to the supreme court’s Sanchez decision on which Rail relies — analyzed an inconsistent verdicts claim for plain error when the defendant did not object at trial. But the division did not consider waiver. Nor does the opinion reflect any affirmative conduct by defense counsel that would show a waiver.

 ¶30         In People v. Phillips, 91 P.3d 476, 478 (Colo. App. 2004), another division reviewed for plain error the defendant’s unpreserved claim that the trial court had erred when it polled only eleven of twelve jurors. The division rejected without analysis the Attorney General’s argument that by failing to object, the defendant had waived the claim. Id. at 479 (“Contrary to the People’s contention, we do not employ a waiver theory.”). Still, as with the court of appeals’ decision in Sanchez, the Phillips opinion does not reflect any affirmative conduct by defense counsel indicating a waiver.

 ¶31         Even before considering waiver by affirmative conduct, however, reviewing for plain error could be problematic because of possible significant strategic motives of trial counsel to avoid bringing an inconsistent verdict to the trial court’s attention, leaving appellate counsel to raise inconsistency as the primary ground for reversal. See People v. Fichtner, 869 P.2d 539, 543 (Colo. 1994) (requiring a contemporaneous objections discourages parties from “gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial”) (citation omitted), superseded by statute as stated in People v. Cardenas, 262 P.3d 913 (Colo. App. 2011).

 ¶32         As the Alaska Courts of Appeals explained in a similar case,

 [i]f the attorney alerts the trial judge to the problem, the trial judge would normally advise the jurors that their verdicts are inconsistent and can not be accepted, and the judge would then direct the jurors to return to their deliberations — leaving open the possibility that the jurors would resolve the inconsistency in the State's favor. Or . . . a timely objection might prompt the trial judge to ask the jury to clarify the basis of its decision by means of a special verdict.

 Miller v. State, 312 P.3d 1112, 1115 (Alaska Ct. App. 2013).

 ¶33         With only this much for guidance, one might ask whether adopting the Attorney General’s default suggestion of plain error review would allow Rail to “have his cake and eat it too.” People v. Eppens, 979 P.2d 14, 22 (Colo. 1999) (citation omitted); see People v. Bondsteel, 2015 COA 165, ¶130 (declining plain error review because “the record creates a strong inference that defense counsel did not object . . . as a matter of strategy”).[6] But the picture would be incomplete without considering another division’s decision in an analogous setting that turns solely on waiver.

 ¶34         Without either citing Phillips or considering circumstances suggesting a strategic reason not to object, the division in People v. Cordova, 199 P.3d 1, 4 (Colo. App. 2007), applied waiver to an untimely verdict form challenge in a criminal case. There, the jury foreperson did not sign verdict forms for two of eighteen total counts. Id. at 3; see Crim. P. 31(a)(3) (A jury verdict “shall be unanimous and signed by the foreman.”). Yet, the defendant failed to object to the unsigned verdict forms. Cordova, 199 P.3d at 4. Nor did the defendant challenge the prosecutor’s sentencing memorandum — which included recommended sentences for the two unsigned counts — or the imposition of sentences on those counts. Id. For these reasons, the division “conclude[d] that Cordova waived the absence of signed verdict forms on counts three and eleven” by failing to object at any point before appeal. Id.[7]

 ¶35         Cordova, Phillips, and Sanchez all involved defense counsel’s mere silence. People v. Rediger, 2015 COA 26 (cert. granted Feb. 16, 2016), decided after these three cases, found a waiver based on defense counsel’s affirmative conduct. While Rediger did not involve a jury irregularity, it too is informative.

 ¶36         There, the defendant did not object when the prosecutor tendered jury instructions tracking an inapplicable statute, the prosecutor referred to those instructions in opening statement, or the court instructed the jury using these instructions. Id. at ¶¶45-47. After all this, when the trial court asked whether defense counsel was “satisfied” with the jury instructions, counsel replied, “Yes. Defense is satisfied.” Id. at ¶47. On appeal, the Attorney General argued that the defendant “did more than fail to object.” Id. at ¶49.

 ¶37         The division agreed. It explained that the defendant’s “affirmative acquiescence” to the incorrect jury instruction “fit the classic definition of waiver.” Id. at ¶¶51, 60. It also noted that “many courts have treated any affirmative conduct by defense counsel as waiver.” Id. at ¶60. And because the division deemed the claim waived, there was “no error or omission” to review for plain error. Id. at ¶¶55, 57, 60 (citing People v. Rodriguez, 209 P.3d 1151, 1160 (Colo. App. 2008)).[8]

 2. Application

 ¶38         Applying Cordova, by analogy a Colorado statute, and Rediger, we conclude that Rail waived his inconsistency claim.

 ¶39         First, like defense counsel in Cordova, had Rail raised the
 inconsistency before the jury was discharged, it would have been correctable. See, e.g., Crim. P. 31(d) (“If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.”); People v. Tweedy, 126 P.3d 303, 309 (Colo. App. 2005) (“[A] trial court has the authority before accepting a verdict and before discharging a jury to send it back to correct a mistake or to clarify an ambiguity in its verdict.”).[9] But once the jury was discharged, the inconsistency became impossible to rectify short of ordering a new trial. See Morales v. Golston, 141 P.3d 901, 905 (Colo. App. 2005) (“[F]ailure to object timely deprives the court of the option of sending the jury back for further deliberations.”).

 ¶40         Second, where an irregularity involving jurors has arisen, the trial court “shall not declare a mistrial or set aside a verdict” unless the aggrieved party “objects to such irregularity or defect as soon as possible after its discovery. § 13-71-140, C.R.S. 2015 (emphasis added). While this statute applies to selecting, summoning, and managing jurors,” id., in deciding whether to follow Cordova we are guided by the General Assembly’s policy choice to require prompt action. See Francen v. Colo. Dep’t of Revenue, Div. of Motor Vehicles, 2014 CO 54, ¶43 (“The General Assembly has made its policy choice clear, and it seems appropriate to honor that decision.”).

 ¶41         Third, even if section 13-71-140 does not compel the conclusion that Cordova’s waiver by silence rule controls, Rediger tips the scales. Rail’s counsel — like defense counsel in Rediger, ¶49, “did more than fail to object.” Rather, he affirmatively declined the trial court’s offer to poll the jury further, which would have led to the trial court reading the inconsistent answers to the unanimity interrogatory. And as explained in Rediger, ¶60, such affirmative conduct obviates further inquiry into whether Rail’s counsel declined the court’s offer due to strategy or inadvertence. See also People v. Foster, 2013 COA 85, ¶38 (“Whether viewed as waiver or invited error, this distinction between reviewable omission and unreviewable commission highlights the difficulty of testing the latter for attorney incompetence.”).

 ¶42         Given all this, we conclude that Rail waived his inconsistency claim. And because this claim was waived, we need not consider whether any error in entering the guilty verdict for SAOC was plain. See Rediger, ¶51.

 III. Constructive Amendment

 ¶43         Rail next contends the trial court’s response to a jury question during deliberations constructively amended the information as to the SAOC charge, requiring reversal. We reject this contention. 

 A. Additional Background

 ¶44         The information alleged that Rail had subjected B.H. to sexual contact between March 24, 1999, and March 21, 2001, but did not describe any specific incidents. At trial, B.H. testified to sexual contact with Rail at an Embassy Suites hotel. She could not say when this incident happened, but her mother testified that she thought Rail had taken B.H. to this hotel in 2007.

 
  

 ¶45         During deliberations, the jury sent a question to the court: “On Instruction [No.] 2 the time period of sexual assault on [B.H.] is stated as between: March 24, 1999 and March 21 of 2001. Is this the only time period we are to consider to reach a verdict[?]” After hearing from counsel for both parties, the court replied, “The incident which is alleged to have occurred at the Embassy Suites hotel need not be within that time period.” As indicated above, on the pattern interrogatory, the jury answered that the Embassy Suites incident had been proved.

 B. Preservation and Standard of Review

 ¶46         Before the trial court answered the jury question, Rail’s counsel argued that the jury should be limited to only events within the timeframe alleged in the information:

 I think that at or about the date and place charged is defined in the instructions as the elementals for [SAOC] . . . . 

 And I think that the date at or about the date charged is defined in Instruction No. 2, and I don’t think that we are in a position to tell them that they can go outside of that.

 . . . .

 I would just ask the Court note that we object and would ask the Court just refer the jury back to the original instruction.

 ¶47         Although defense counsel did not object on the specific basis that the trial court’s response to the jury question constructively amended the information, the Attorney General concedes preservation. As well, lack of preservation is not jurisdictional. See Crim. P. 52(b) (permitting appellate courts to review unpreserved claims). For these reasons, we address the merits of this claim.

 ¶48         An appellate court reviews de novo whether a variance occurred. See People v. Rodriguez, 914 P.2d 230, 256-58 (Colo. 1996).

 C. Law

 ¶49         Colorado courts recognize two types of variances from the charging instrument: a constructive amendment and a simple variance. People v. Vigil, 2015 COA 88M, ¶30.

 ¶50         A constructive amendment “alter[s] the substance of the indictment.” People v. Gallegos, 260 P.3d 15, 26 (Colo. App. 2010). It occurs “when jury instructions change an element of the charged offense to the extent the amendment ‘effectively subject[s] a defendant to the risk of conviction for an offense that was not originally charged.’” Vigil, ¶30 (citations omitted). A constructive amendment is per se reversible. Id.

 ¶51         In contrast, a simple variance occurs “when the elements of the charged crime remain unchanged, ‘but the evidence presented at trial proves facts materially different from those alleged in the indictment.’” Id. (quoting Rodriguez, 914 P.2d at 257). A simple variance requires reversal only if it prejudices the defendant’s substantial rights. See People v. Huynh, 98 P.3d 907, 912 (Colo. App. 2004) (“Inasmuch as defendant has made no showing that the variance here impaired his ability to defend against the charge . . . he is not entitled to reversal.”).

 D. Application

 ¶52         To begin, the Attorney General asserts that Rail’s argument is moot because even taking away the Embassy Suites incident, the jury still marked on the pattern interrogatory that four other incidents of sexual contact had been proved, and the prosecution need prove only two incidents of sexual contact to establish a pattern of abuse. See § 18-3-401(2.5), C.R.S. 2015. Having concluded that Rail waived his inconsistent interrogatory answers claim, however, we did not attempt to reconcile the jury’s inconsistent responses to the interrogatories. And because the power to reconcile inconsistent verdicts in a criminal case — an issue with constitutional implications — has not been addressed in Colorado, we decline to do so for purposes of determining mootness. See, e.g., People v. Lybarger, 700 P.2d 910, 915 (Colo. 1985) (“Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless . . . the necessity for such a decision is clear and inescapable.”).

 ¶53         The trial testimony indicating that the Embassy Suites incident had occurred outside of the timeframe alleged in the information epitomizes a simple variance. See Huynh, 98 P.3d at 911. While Rail asserts that “changing the date range . . . radically changed the charge[,]” thereby constituting an impermissible constructive amendment, he cites no Colorado authority supporting this position. To the contrary, the division in Huynh concluded that “a variance between the specific date alleged in the charging document and that which is proved at trial is not fatal.” Id. Because we discern no reason to take a different view, we conclude the trial court’s answer to the jury question created a simple variance, not a constructive amendment.

 ¶54         Recall, a simple variance does not require reversal unless the variance prejudiced the defendant’s substantial rights. But Rail fails to explain how he was prejudiced. For example, he does not assert surprise as to the essential facts of the Embassy Suites incident. See People v. Pahl, 169 P.3d 169, 178 (Colo. App. 2006) (rejecting prejudice where the defendant did not allege he was unaware of essential facts that differed from the offense as charged). Nor does he suggest that he would have challenged the prosecution’s case differently, had this incident been charged in the information. See id.

 ¶55         Instead, Rail argues that he “did not have notice that the Embassy Suites event . . . was being charged as part of the substantive offense[.]” But the Embassy Suites incident appeared only on the pattern interrogatory, not on the unanimity interrogatory pertaining to the substantive offense of SAOC. Thus, it was not “charged as part of the substantive offense[.]”

 ¶56         Therefore, because Rail has failed to show how he was prejudiced by the simple variance, reversal is not required.

 IV. Expert Witness

 ¶57         Rail next contends the trial court violated his constitutional rights to due process and a fair trial by admitting expert testimony on the general behavior of child sexual abuse victims. We discern no error.

 A. Additional Background

 ¶58         Before trial, Rail moved to exclude testimony from Suvi Miller, a therapist specializing in the treatment of sexually abused children designated by the prosecution as an expert witness. At the pretrial motions hearing, neither Rail’s counsel nor the prosecutor sought to offer evidence concerning this motion. After hearing argument from both sides, the court found that Miller had been qualified as an expert in numerous other cases, she had undergone specialized training and had experience in treating children who have been sexually victimized, her proffered testimony “has a basis in the literature and is accepted by the experts in the field,” her testimony would help the jury understand the “curious” behaviors of child victims, and her testimony would not improperly bolster the victims’ testimony. Then the court denied Rail’s motion and allowed Miller to testify as an expert on the behavior of sexually abused children.

 ¶59         At trial, Miller conceded that she had never met the victims in Rail’s case, but testified that she had treated more than three-hundred child victims of sexual abuse over her twenty-year career, and that her opinion was based on general patterns she had observed. As to those general patterns, Miller opined that child victims frequently delay reporting their abuse. She also explained that children who have been abused multiple times often have difficulty isolating details regarding particular instances, whereas children who have been abused only once can recall specific details.

 B. Preservation and Standard of Review

 ¶60         The Attorney General concedes that Rail’s pretrial motion preserved his challenge to Miller’s testimony.

 ¶61         An appellate court reviews rulings on the admission of expert testimony for an abuse of discretion. See People v. Hogan, 114 P.3d 42, 50 (Colo. App. 2004). A trial court abuses its discretion when its action is manifestly arbitrary, unreasonable, or unfair. Id.

 ¶62         While Rail urges application of the constitutional harmless error standard, challenges to the admission of evidence are subject to only nonconstitutional harmless error review. See People v. Flockhart, 2013 CO 42, ¶20 (“Only those errors ‘that specifically and directly offend a defendant’s constitutional rights are constitutional in nature.’”) (citation omitted). Under this standard, an error is harmless if “in light of the entire record, the error did not substantially influence the verdict or impair the fairness of the trial.” People v. Wilson, 2013 COA 75, ¶24.

 C. Law

 ¶63         A trial court considers four factors when determining whether to admit expert testimony: whether (1) the scientific principles underlying the expert’s opinion are reasonably reliable; (2) the expert is qualified to provide an opinion on such matters; (3) the opinion will help the jury; and (4) the opinion’s probative value is not outweighed by the danger of unfair prejudice. People v. Shreck, 22 P.3d 68, 77-79 (Colo. 2001). A trial court may conduct an evidentiary hearing regarding the Shreck factors, but a hearing is not required, “provided [the court] has before it sufficient information to make specific findings.” People v. Rector, 248 P.3d 1196, 1201 (Colo. 2011).

 ¶64         Divisions of this court have consistently upheld the admission of “[e]xpert testimony about the general behavior of sexual assault victims.” People v. Whitman, 205 P.3d 371, 383 (Colo. App. 2007); see also People v. Carter, 919 P.2d 862, 866 (Colo. App. 1996) (Evidence describing the patterns, effects, and dynamics of child sexual abuse victims is admissible, “as long as it is not offered as evidence that a victim was truthful on a particular occasion.”).

 D. Application

 ¶65         Rail argues that the trial court abused its discretion by failing to fulfill its gatekeeping duties in denying his motion and allowing Miller’s expert testimony. We conclude that the trial court made adequate findings on the Shreck factors and its findings have sufficient record support.

 ¶66         To begin, numerous Colorado cases have upheld the admission of comparable expert testimony from similarly qualified experts, concluding that the testimony was helpful and not unfairly prejudicial. See, e.g., People v. Glasser, 293 P.3d 68, 78 (Colo. App. 2011) (explaining that “expert testimony about the general behavior of sexual assault victims may be helpful to the jury and may therefore be admissible,” and concluding the testimony was not unfairly prejudicial); Whitman, 205 P.3d at 382 (upholding expert testimony on the “range of behavior demonstrated by child sexual assault victims,” from an expert with similar qualifications to Miller, and noting that the trial court did not abuse its discretion in deeming this testimony helpful); People v. Baenzinger, 97 P.3d 271, 275 (Colo. App. 2004) (noting that testimony explaining reactions of victims is helpful to the jury). While Rail attempts to distinguish such cases, he cites no directly contrary Colorado authority.

 ¶67         We turn to those arguments Rail makes on appeal that he also raised before the trial court at the Shreck stage of proceedings. See Rector, 248 P.3d at 1201 (declining to review the defendant’s challenges to the admission of expert testimony that had not been raised before the trial court at the Shreck hearing).

 1. Reliability

 ¶68         Rail asserts that Miller’s testimony was unreliable because she does not investigate the veracity of her child patients’ claims of abuse. According to Rail, because Miller does not substantiate such claims, her opinions on the behavior of children who have been abused could have been based primarily on observations of children who had not been abused.

 ¶69         True enough, the trial court had no way of determining what percentage of Miller’s observations involved children who had not been abused. But Rail cites no authority, nor have we found any in Colorado, restricting expert witnesses to opinions derived from victims of known sexual abuse. This absence of authority is unsurprising because “seldom can acts of sexual abuse be physically corroborated, and usually the only evidence available directly implicating the attacker is the child’s hearsay statements.” Stevens v. People, 796 P.2d 946, 952 (Colo. 1990).

 ¶70         Thus, observations of behavior common to children being treated because of reported abuse is a reasonable basis for expert opinion, without requiring the expert to have undertaken the often impossible task of first corroborating the allegations. See People v. Laurent, 194 P.3d 1053, 1058-59 (Colo. App. 2008) (Trial court did not abuse its discretion in admitting expert testimony when the opinion was not based on “a written, validated analytical method, and, as a result, the testing could not be independently repeated and the results verified.”); see also Estate of Ford v. Eicher, 250 P.3d 262, 268-69 (Colo. 2011) (“[E]xcluding testimony because the theory cannot be tested and error rates cannot be assessed focuses the reliability analysis too narrowly.”).

 ¶71         For these reasons, the trial court did not abuse its discretion in concluding that Miller’s expert testimony was sufficiently reliable.

 2.     Bolstering

 ¶72         Rail also argues that Miller’s testimony impermissibly bolstered B.H.’s credibility. But a division of this court has rejected this argument in the context of similar expert testimony. See Glasser, 293 P.3d at 78 (“[E]xperts may testify concerning whether a victim’s behavior or demeanor is consistent with the typical behavior of victims of abuse.”). And how Miller’s testimony would have bolstered the victims’ testimony any more than the testimony in Glasser is unclear because Miller told the jury she had never treated or interviewed the victims and she was not even aware of the facts underlying the charges against Rail. Hence, we decline to depart from Glasser.

 ¶73         Therefore, the trial court did not abuse its discretion in concluding Miller’s testimony would not improperly bolster the victims’ credibility.

 3. Unfair Prejudice

  

 ¶74         Finally, Rail argues that Miller’s testimony was unfairly prejudicial because the jury applied her testimony — based on unsubstantiated allegations of abuse — to the facts of the case, such that the testimony played a significant role in the jury’s verdict. We will assume, without deciding, that in a case without physical evidence or other means of verifying allegations, “anything that would sway the jury as to [B.H.]’s credibility was critical,” as Rail argues. But Rail does not explain how Miller’s testimony was unfairly prejudicial, aside from reiterating that Miller’s testimony was unreliable — an assertion that we have already rejected.

 ¶75         For these reasons, we conclude the trial court did not abuse its discretion in qualifying Miller as an expert and permitting her to testify regarding the behavior of child sex abuse victims.

  

 V. Constitutionality of the Colorado Sex Offender Lifetime Supervision Act 

 ¶76         Rail challenges the constitutionality of the Colorado Sex Offender Lifetime Supervision Act of 1998, sections 18-1.3-1001 to -1012, C.R.S. 2015. Every division of this court to have considered this assertion has rejected it. See People v. Dash, 104 P.3d 286 (Colo. App. 2004); People v. Lehmkuhl, 117 P.3d 98, 105 (Colo. App. 2004); People v. Oglethorpe, 87 P.3d 129 (Colo. App. 2003); People v. Strean, 74 P.3d 387 (Colo. App. 2002). Because Rail neither raises different arguments nor cites new authority, his position is meritless.

 VI. Conclusion

 ¶77 Rail’s judgment of conviction is affirmed. 

  

 [1] The prosecution also presented evidence concerning a second victim, but the jury acquitted Rail of those charges.

 [2] Cf. Stackhouse v. People, 2015 CO 48, ¶¶5-10 (concluding that the defendant waived his right to a public trial — denial of which is a structural error — by failing to object when court closed the courtroom during jury selection).

 [3] For that matter, not all inconsistent verdicts are subject to reversal at all. See United States v. Powell, 469 U.S. 57 (1984) (holding that factually inconsistent verdicts are permissible). As numerous lower federal courts have explained, an inconsistency that arises from conviction on one charge and acquittal on another is factual and may reflect a jury compromise. See, e.g., United States v. Randolph, 794 F.3d 602, 610 (6th Cir. 2015) (“[I]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.” (quoting Powell, 469 U.S. at 65)); United States v. Zuniga-Salinas, 952 F.2d 876, 878 (5th Cir. 1992) (same). And allowing a defendant to attack a guilty verdict as inconsistent with a not guilty verdict would unfairly disadvantage the prosecution, which cannot attack the not guilty verdict as inconsistent with the guilty verdict. See, e.g., United States v. Scop, 940 F.2d 1004, 1008 (7th Cir. 1991) (In the event the jury returns inconsistent verdicts, including an acquittal of one charge, “the government is prevented from upsetting the acquittal by the Double Jeopardy clause.”). We decline to reject Rail’s inconsistency claim outright on the basis that it is merely a factual inconsistency because the Attorney General has not asked us to do so, and thus Rail would have no chance to respond.

 [4] Limited out-of-state authority does so as well. See, e.g., Miller v. State, 312 P.3d 1112, 1115 (Alaska Ct. App. 2013); People v. Bennett, 769 N.E.2d 117, 128 (Ill. App. Ct. 2002); State v. Flemons, 144 S.W.3d 877, 881 (Mo. Ct. App. 2004).

 [5] Again, out-of-state authority is in accord. See, e.g., United States v. Montalvo, 331 F.3d 1052, 1057 (9th Cir. 2003) (“[A]n instruction that merely omits the unanimity requirement with respect to an element of the offense cannot be categorized as structural.”) (citing Ross v. United States, 289 F.3d 677, 681-82 (11th Cir. 2002); Santana-Madera v. United States, 260 F.3d 133, 139 (2d Cir. 2001); United States v. Jefferson, 215 F.3d 820, 823 (8th Cir. 2000); United States v. Escobar-de Jesús, 187 F.3d 148, 161-62 (1st Cir. 1999)).

 [6] Had Rail’s counsel accepted the trial court’s offer of further polling, the inconsistency would have surfaced. Then the jury could have:

 
 
 conformed the SAOC guilty verdict and the unanimity interrogatory answers by changing “[n]ot [p]roved” to “[p]roved” on the latter;
 
 
 
 changed the SAOC guilty verdict to not guilty, which would also have required a corresponding change in the pattern interrogatory answers from “[p]roved” to “[n]ot [p]roved”; or
 
 
 
 changed the SAOC-POT not guilty verdict to guilty and made the corresponding change in the unanimity interrogatory answers from “[n]ot [p]roved” to “[p]roved.”
 

 Of course, what the jury would have done is unknowable. But the consequences to Rail of the three possibilities are beyond dispute. The first action would have removed the inconsistency underlying Rail’s primary appellate argument. The third action would have left Rail convicted of and subject to additional sentencing on another felony. Only the second action would have improved Rail’s position. Thus, in raising the inconsistency before the jury was discharged, Rail had more to lose than to gain.

 [7] This conclusion is consistent with civil cases uniformly holding that a correctable verdict problem is waived if not raised before the jury is discharged. See, e.g., LaFont v. Mooney Mixon, 374 S.W.3d 668, 672 (Ark. 2010) (“Our law is well settled that the time to object to an irregularity or inconsistency in the verdict or to correct or clarify the verdict is before the jury is discharged, and any failure to so object operates as a waiver of the irregularity or inconsistency.”); Bldg. Structures, Inc. v. Young, 968 P.2d 1287, 1291 (Or. 1998) (“In a number of cases . . . this court has confirmed that, by failing to object when the jury is present, a party waives objection to the jury’s failure to accompany an award of economic damages with an award of noneconomic damages.”); Minger v. Reinhard Distrib. Co., Inc., 943 P.2d 400, 402 (Wash. Ct. App. 1997) (Appellants “waived any objection to the verdict based on the alleged inconsistency by failing to bring it to the attention of the trial court at the time the jury was polled and before the jury were [sic] discharged.”).

 [8] Looking beyond Colorado, some criminal cases support applying waiver to inconsistent verdict claims. See, e.g., People v. Curry, 603 N.Y.S. 2d 578, 578-79 (N.Y. App. Div. 1993) (“Because the defendant did not move to set aside the verdict as inconsistent until his sentencing, which was one month after the jury had rendered its verdict and had been discharged, his argument that the verdict is inconsistent is unpreserved for appellate review.”); State v. Goins, 54 P.3d 723, 724 (Wash. Ct. App. 2002), aff’d, 92 P.3d 181 (Wash. 2004).

 [9] Other jurisdictions have taken this approach with ambiguous or inconsistent verdicts. See, e.g., State v. Hansen, 345 P.3d 116, 120 (Ariz. Ct. App. 2015) (“‘[A] verdict must be unqualified and unambiguous,’ and ‘[a] trial court may not accept a verdict if it is defective but must either direct the jury to retire for further deliberation or declare a mistrial.’”) (citation omitted); see also United States v. Shippley, 690 F.3d 1192, 1193-94 (10th Cir. 2012) (jury returned a guilty verdict on general verdict form, yet answered “no” on special interrogatories indicating the defendant distributed none of the drugs at issue, and trial court properly asked jury to further deliberate).

  

  

 JUDGE BOORAS concurs.

 JUDGE J. JONES specially concurs.

 
  

 JUDGE J. JONES, specially concurring.

 ¶78         I concur in the judgment but write separately because I would analyze the inconsistent verdicts issue differently than does the majority.

 ¶79         The court gave the jury four verdict forms — two general verdict forms (one for SAOC and one for SAOC-POT) and two special interrogatory forms (one unanimity form and one pattern of abuse form). The jury answered the two special interrogatory forms inconsistently. On the unanimity instruction it marked each of the four acts of sexual conduct “Not Proved,” but on the pattern of abuse form it marked each of those acts and one more act as “Proved.”

 ¶80         After the jury reached its verdicts, the district court read the two general verdict forms and the pattern of abuse form in open court. But it did not read the unanimity form. So at that point counsel knew the jury had found defendant guilty of SAOC and that five acts of sexual conduct had been proved. Polling confirmed those verdicts.

 ¶81         The majority concludes that defendant waived any claim of error regarding the inconsistent unanimity and pattern of abuse forms because his counsel declined the court’s offer to further poll the jury. It is not clear to me, however, that counsel’s mere declining of that offer waived the claim because at the point in time the offer was made there had been no other verdicts read in open court as to which the jury could be polled.

 ¶82         That is not to say there was no waiver. Defense counsel knew or should have known that the court had not read the unanimity form in open court. That was an irregularity in the return of the verdicts. See Crim. P. 31(a)(3). Had counsel brought that irregularity to the court’s attention, the inconsistency would have been revealed to all and the inconsistency could have been resolved. Under such circumstances waiver is applicable.

 ¶83         Waiver is the “intentional relinquishment or abandonment of a known right.” Stackhouse v. People, 2015 CO 48, ¶29 (ultimately quoting United States v. Olano, 507 U.S. 725, 733 (1993)). The court’s failure to read the unanimity form in open court, and counsel’s right to insist that the form be read in open court were known. Defense counsel’s failure to ask the court to read the form is analogous to a failure to object to a closed courtroom or failure to object to an unsigned verdict form, both of which have been found to constitute waiver. Id. at ¶¶10, 16 (closed courtroom); People v. Cordova, 199 P.3d 1, 3-4 (Colo. App. 2007) (unsigned verdict form); see Fischer v. Howard, 271 P.2d 1059, 1063, 1071-72 (Or. 1954) (where counsel is aware of an irregularity in a verdict, failure to raise the issue before the jury is discharged waives the issue), overruled in part on other grounds by Stein v. Handy, 319 P.2d 935 (Or. 1957).

 ¶84         Even were I not to conclude that defendant had waived the claim, however, I would not reverse. I agree with the majority that the claimed error was not structural. And because the claim was not preserved, plain error review applies (if the claim was not waived). Reversal for plain error is required only if (1) there was an error; (2) that error was obvious; and (3) that error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. Hagos v. People, 2012 CO 63, ¶14; People v. Miller, 113 P.3d 743, 750 (Colo. 2005).

 ¶85         Assuming that there was error, and that the error was obvious (because the district court judge had the verdict forms in front of him), I am not convinced that the error casts serious doubt on the reliability of the judgment. This is because, first, the jury confirmed through polling its verdict of guilty on the SAOC charge, which reflected its unanimous conclusion that the People had proved all of the elements of that charge beyond a reasonable doubt, and because, second, the jury confirmed through polling that it had found unanimously that the People had proved beyond a reasonable doubt five acts of sexual conduct. 

 ¶86         Thus, because I concur in all other aspects of the majority opinion, I too would affirm the judgment and sentence.  

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || February 25, 2016

Back