The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ronald Lee PHILLIPS, Defendant–Appellant.

No. 02CA1020.

Colorado Court of Appeals, Div. II.

April 8, 2004.

Ken Salazar, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Stefani Goldin, Fort Collins, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Ronald Lee Phillips, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We affirm.

The victim was defendant's twenty-four-year-old son and had a history of violent and abusive behavior towards his girlfriend and defendant. The victim maintained a separate residence, but on the day of this incident, he visited his parents' home where numerous others were present, including his girlfriend. Over the course of the day, the victim became intoxicated, attempted to assault his girlfriend, threatened to kill her horse, was physically restrained by others, and was generally enraged.

The victim also threatened to kill defendant after he intervened in the dispute between the victim and his girlfriend. Late in the afternoon, the victim entered the house unarmed. As the victim approached, defendant shot and killed him. There was conflicting evidence presented whether the victim lunged at defendant and threatened to kill him.

Before trial, defendant moved to dismiss the information, contending he was entitled to immunity under the so-called make-my-day statute, § 18–1–704.5, C.R.S.2003. After a hearing, the trial court concluded he had not shown by a preponderance of the evidence that the victim unlawfully entered the dwelling, and therefore, defendant was not entitled to dismissal. However, the court concluded the issue could be presented to the jury as an affirmative defense. *See People v. Guenther*, 740 P.2d 971 (Colo.1987)(the make-my-day statute affords defendants a pretrial determination of the statutory immunity claim, § 18–1–704.5(3), C.R.S.2003, and may also be raised at trial as an affirmative defense).

Defendant's theories at trial were that his actions were justified under the make-my-day statute and also by self-defense.

After the jury deliberated and announced it had reached a verdict, the trial court read the verdict of guilty in open court and then asked the jury: "Is this your verdict, so say you one, so say you all?" The jury panel answered yes without dissent. Defendant requested that the jury be polled, and the trial court asked eleven of the twelve jurors, including the foreperson, but excluding the alternates, "Is this your verdict?" There is no explanation why the twelfth juror was not polled. The court then entered a judgment of conviction against defendant.

## I.

Defendant contends the trial court committed structural error by failing to poll one juror. The People contend defendant waived this issue for appeal by failing to object at trial to the incomplete jury poll. We reject both arguments and apply the plain error standard of review.

Structural errors affect the framework within which the trial proceeds, are not subject to a harmless or plain error analysis, and result in automatic reversal. *Griego v. People*, 19 P.3d 1 (Colo.2001); *People v. Mil-*

*ligan*, 77 P.3d 771 (Colo.App.2003). Structural errors affect the entire conduct of the trial or deny the defendant·a basic protection and include trial before a biased judge, denial of the right to self-representation at trial, deprivation of the right to counsel, and violation of the right to a public trial. *See Key v. People*, 865 P.2d 822, 826 n. 8 (Colo.1994); *People v. Willcoxon*, 80 P.3d 817 (Colo.App. 2002).

■ A criminal defendant has the right to a unanimous verdict under state statute and rule. Section 16–10–108, C.R.S.2003; Crim. P. 23(a)(8), 31(a)(3). Unanimity requires a deliberative process that expresses the conscientious conviction of each individual juror. *People v. Lewis*, 676 P.2d 682 (Colo.1984); *Lowe v. People*, 175 Colo. 491, 488 P.2d 559 (1971).

Crim. P. 31(d) provides:

When a verdict is returned and before it is recorded, the jury shall be polled at the request of any party·or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

■ A jury poll ordinarily requires each juror to assent in the verdict. *See People v. Martinez*, 987 P.2d 884 (Colo.App.1999); 21A Am.Jur.2d *Criminal Law* § 1297 (2003)(trial court should ask each juror individually to affirm the verdict).

However, the right to a jury poll is not absolute, and matters relating to the manner of conducting a jury poll are generally committed to the discretion of the trial court. *Ryan v. People*, 50 Colo. 99, 108, 114 P. 306, 310 (1911)(holding that no substantial right of the defendant was violated where jury was not polled; at common law, the matter of polling was in the trial court's discretion and its question to jury, "So say you all?" and all jurors' assent were "in effect a poll of the jury"); *People v. Auman*, 67 P.3d 741, 767 (Colo.App.2002)(*cert. granted* Mar. 24, 2003)(trial court has discretion in choosing words to poll jury); *People v. Barnard*, 12 P.3d 290, 295 (Colo.App.2000)(abuse of discretion standard applies to trial court's determination whether the verdict was unanimous

and to consideration of a juror's doubt as to his or her verdict); 21A Am.Jur.2d *Criminal Law* § 1297 (court has discretion "as to how a jury should be polled"); *see Cabberizá v. Moore*, 217 F.3d 1329 (11th Cir.2000)(defendant had no constitutional right to jury poll); *Hatcher v. Jackson*, 853 F.2d 212, 214 (3d Cir.1988)(rejecting argument that due process requires court to ascertain the propriety of a questionable jury verdict).

In *People v. Auman, supra*, 67 P.3d at 767, the defendant contended the trial court's "imprecise hurry-up" polling of the jury did not adequately protect her right to a unanimous verdict. There, as here, the defendant did not object at trial, and the division concluded review was under the ordinary plain error standard. The division concluded there was no plain error, observing that the record showed no confusion or reservations by the jurors when the trial court polled them.

■ We disagree with defendant that we must apply a structural error analysis. We conclude that *Auman* is persuasive and that where no contemporaneous objection is made to an asserted error or defect occurring during the polling of the jury, our review is limited to whether the error or defect rises to the level of ordinary plain error. Contrary to the People's contention, we do not employ a waiver theory. *See Hunter v. State*, 177 Ga.App. 326, 339 S.E.2d 381, 382 (1985)(concluding there was no reversible error where defendant did not object to incomplete polling of jury); *People v. Galloway*, 74 Ill.App.3d 624, 30 Ill.Dec. 572, 393 N.E.2d 608, 610 (1979)(concluding waiver was justified because "[a]ny oversight could have been corrected immediately if defense counsel had made an objection at the time"; alternatively, court found no prejudice because of clear evidence of crime); *State v. Brunette*, 220 Wis.2d 431, 583 N.W.2d 174 (Ct.App.1998)(concluding defendant's failure to call trial court's attention to any deficiency or incompleteness of an individual polling waives claim of error).

■ The standard for plain error is whether, after reviewing the entire record, we can say with·fair assurance the error so ·under-

mined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See* Crim. P. 52(b); C.A.R. 35(e); *Wilson v. People,* 743 P.2d 415 (Colo.1987); *People v. Johnson,* 74 P.3d 349 (Colo.App.2002).

Because the jurors in this case orally informed the court their verdict was unanimous and the record does not show a lack of unanimity in the verdict, the unexplained failure individually to poll one of the jurors did not undermine the fundamental fairness of the trial. Thus, we perceive no plain error.

## II.

Defendant also contends the trial court committed structural error in failing to instruct the jury properly on his affirmative defense under the make-my-day statute, § 18–1–704.5. We disagree, and because defendant made no contemporaneous objection to the instruction, we apply the ordinary plain error standard of review. We conclude there was no such error.

It is the duty of the trial court to instruct the jury properly on all matters of law. *People v. Stewart,* 55 P.3d 107 (Colo. 2002); *People v. Hayward,* 55 P.3d 803 (Colo. App.2002). In determining the propriety of a particular jury instruction, we view the instructions as a whole. *People v. Trujillo,* 83 P.3d 642 (Colo.2004).

In enacting the make-my-day statute, the General Assembly stated that "the citizens of Colorado have a right to expect absolute safety within their own homes." Section 18–1–704.5(1), C.R.S.2003.

Section 18–1–704.5(2), C.R.S.2003, provides:

> Notwithstanding the provisions of [the self-defense statute], any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an *unlawful entry* into the dwelling, and when *the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry,* and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

(Emphases added.)

As noted earlier, the statute affords defendants a pretrial determination of the statutory immunity claim, § 18–1–704.5(3); *People v. Guenther, supra,* and may also be raised at trial as an affirmative defense. The burden of proof generally applicable to affirmative defenses applies to such a defense, and the prosecution must establish the defendant's guilt beyond a reasonable doubt as to that issue as well as all other elements of the offense. Section 18–1–407(2), C.R.S.2003; *People v. Janes,* 982 P.2d 300 (Colo.1999).

Here, the court gave the following instruction without objection by defendant:

> It is an affirmative defense to the crime of Second Degree Murder that the Defendant used physical force, including deadly physical force, against another person, that while the defendant was an occupant of a dwelling
>
> 1. the other person made an unlawful entry into that dwelling,
>
> 2. *the defendant had a reasonable belief that the other person had committed a crime in the dwelling in addition to the uninvited entry,*
>
> 3. and the defendant reasonably believed the other person might have used any physical force, no matter how slight, against any occupant of the dwelling.

(Emphasis added.)

The jury was also given the following instruction regarding affirmative defenses:

> The prosecution has the burden of proving the guilt of the defendant to your satisfaction beyond a reasonable doubt as to the affirmative defenses, as well as to all the elements of the crime charged.
>
> After considering the evidence concerning the affirmative defenses, with all the other evidence in this case, if you are not convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of not guilty.

On appeal, defendant contends that under the facts of this case, the make-my-day instruction should not have required the jury to find he had a reasonable belief the victim *had committed a crime* in the dwelling in addition to the uninvited entry. He maintains that the instruction should have required only that he had a reasonable belief the victim *was committing or intended to commit a crime* in the dwelling, in addition to the uninvited entry. We agree, but conclude reversal is not required.

## A.

■ As a threshold matter, we address and reject defendant's argument that jury instructions with elemental errors should be reviewed for structural error.

In *Griego v. People, supra,* the supreme court held that "when a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing that element, that error is subject to constitutional harmless or plain error analysis and is not reviewable under structural error standards." *Griego v. People, supra,* 19 P.3d at 8. The court expressly disapproved its prior holding in *People v. Vance,* 933 P.2d 576 (Colo.1997), upon which defendant relies.

We also reject the People's argument that the instruction in issue was attributable to defendant, and that the invited error doctrine precludes him from challenging it. The record is silent regarding who drafted or tendered this instruction, and there is no basis for presuming it was attributable to defendant. *See People v. Stewart, supra.*

Because no contemporaneous objection was made to the instruction, we review the jury instruction for ordinary plain error. *See* Crim. P. 52(b); *Wilson v. People, supra; People v. Johnson, supra.*

## B.

■ Turning to the merits of defendant's argument, we conclude the instruction was erroneous because defendant had an affirmative defense under the make-my-day statute if the evidence showed and the jury found, in addition to the unlawful entry, that defendant had a reasonable belief the victim was committing or intended to commit a crime in the dwelling. However, the jury instruction given here imposed a different requirement inconsistent with the facts, namely, that the evidence show and the jury find, in addition to the unlawful entry, that defendant had a reasonable belief the victim actually had committed a crime in the dwelling.

■ Nevertheless, we conclude the erroneous instruction did not constitute plain error because there was no evidence the victim's entry into the house was unlawful, and therefore, no basis on which a reasonable jury could have acquitted defendant under the make-my-day statute.

In *People v. McNeese,* 892 P.2d 304, 310 (Colo.1995), the supreme court addressed the make-my-day statute at length and discussed the legislative intent behind it. The court concluded unlawful entry means a knowing, criminal entry into a dwelling, and stated:

> In the House and Senate debates on the original "make-my-day" bill, the sponsors [of the] bill referred to the bill as a "homeowner's protection bill." In describing the function of the bill, the House and Senate sponsors repeatedly alluded to the bill's *protection of homeowners from "intruders" and people who "break[ ] and enter[ ]" into homes "illegally."* The sponsors pointed out the bill's potential for deterring criminals from breaking into homes. *The typical scenario discussed in the debates and hearings involved an illegal entry into a home by a stranger in the middle of the night.* The legislative history indicates that the General Assembly intended the "make-my-day" statute to apply in situations where an intruder illegally enters a dwelling. The hearings and debates also demonstrate that *the bill was meant to deter criminals from breaking into a home to commit a crime.*

*People v. McNeese, supra,* 892 P.2d at 310 (citations omitted; emphases added).

The supreme court reasoned that the statute immunizes from criminal prosecution an occupant of a dwelling who uses deadly force and that the "knowing, criminal entry requirement affords the occupant of a dwelling

sufficient protection from criminal prosecution, while discouraging random violence." *People v. McNeese, supra*, 892 P.2d at 311; *see People v. Guenther, supra*, 740 P.2d at 977 (statute creates "conditional immunity" applicable only if certain factual elements are established).

Thus, "unlawful entry" requires an entry "in knowing violation of the criminal law," *People v. McNeese, supra*, 892 P.2d at 311, and unlawfully remaining on property does not satisfy this requirement. *People v. Drennon*, 860 P.2d 589 (Colo.App.1993). Further, while every unlawful entry is necessarily uninvited, an uninvited entry is not necessarily unlawful. *People v. McNeese, supra*, 892 P.2d at 312; *see People v. Malczewski*, 744 P.2d 62 (Colo.1987)(police officer's entry into house was lawful though uninvited).

As a division of this court stated in *People v. Drennon, supra*, 860 P.2d at 591: "[T]he victim was invited into the defendant's residence. Only later was the victim asked to leave. Consequently ... the defendant has failed to establish the legal elements of § 18–1–704.5 to bar prosecution."

According to defendant, here, the jury could have inferred from the trial evidence that the victim's permission to enter the house was withdrawn. Defendant relies on testimony establishing that on the day of the shooting the victim was so violent he had to be restrained to protect others from his behavior; he had kicked defendant in the groin; while the victim and defendant were outside the house, the victim had threatened to kill defendant if he did not go into the house; and defendant went into the house to protect himself.

However, the unrebutted evidence overwhelmingly showed the victim's entry was lawful and invited, unlike an intruder who breaks and enters into the home. The victim's sister testified the victim had a key to the house, knew where the spare key was hidden, and was not in the habit of knocking before entering. The victim's mother testified the victim was raised in the house, visited frequently, kept cars on the property, and stored guns inside the house. Although the mother also testified that on the morning of the shooting, the victim and his nephew were playing with squirt guns inside the house and she "kicked them out," it is undisputed that the victim remained on the property, freely accessed a camper located behind the house, and reentered the house afterward at least twice.

Further, defense counsel's closing argument focused on the victim's conduct, the elements of second degree murder, and the reasonableness of defendant's belief that self-defense was justified. It did not challenge the prosecution's evidence regarding the lawful entry.

The only arguable support we have found for inferring that the victim's permission to enter the house was withdrawn is *People v. Ager*, 928 P.2d 784 (Colo.App.1996). However, *Ager* did not address the make-my-day statute, and we conclude it is distinguishable.

In *Ager*, the defendant argued, as relevant here, that he should not have been convicted of second degree burglary because the victim invited him into the premises he was charged with burglarizing. A division of this court upheld the verdict. The division acknowledged there was conflicting evidence whether the victim invited the defendant to enter the premises before the defendant began to assault him. But the division concluded that, even if the defendant initially had the victim's permission to enter, there was evidence the permission was "implicitly withdrawn" once the defendant began assaulting the victim and the victim attempted to defend himself against the attack. *People v. Ager, supra*, 928 P.2d at 790. Accordingly, the defendant "remained in the [premises] unlawfully." *People v. Ager, supra*, 928 P.2d at 790.

We read *Ager* as holding that in the context of second degree burglary, previously granted authority to enter a premise may be withdrawn. We do not read it as inconsistent with *McNeese* and *Drennon*, which specifically addressed the make-my-day statute and concluded the statute confers immunity on the occupant of a dwelling "only for force used against a person who has made an unlawful entry into the dwelling, but not against a person who remains unlawfully in

the dwelling." *People v. McNeese, supra,* 892 P.2d at 309; *see People v. Drennon, supra,* 860 P.2d at 591; *see also People v. Eckert,* 919 P.2d 962 (Colo.App.1996)(failure to instruct jury on make-my-day affirmative defense was harmless where defendant failed to show that the victim's entry into a bedroom in the victim's house was unlawful and there was no evidence bedroom was exclusive province of defendant); *People v. Esquibel,* 794 P.2d 1065 (Colo.App.1990)(omission of "unlawful" element from burglary instruction was not reversible error where defendant never contended he was on the premises lawfully).

In summary, we agree with defendant that the instruction was erroneous, but conclude it did not constitute plain error because there was no evidence the victim's entry into the house was unlawful. Because there was no basis on which a reasonable jury could have acquitted defendant under the make-my-day statute, we conclude the trial court's error in instructing the jury on defendant's affirmative defense did not undermine the fundamental fairness of the trial so as to cast serious doubt on the reliability of the conviction.

### III.

 Defendant next contends the trial court erred in rejecting his tendered self-defense instruction. He concedes the instruction given tracked the language of the statute, but argues that it was inadequately tailored to the circumstances of his case. We disagree.

 Jury instructions framed in the language of statutes are generally adequate and proper. *People v. Dago,* 179 Colo. 1, 497 P.2d 1261 (1972); *People v. Hayward, supra.* It is unnecessary to give an instruction that is encompassed in other instructions given by the court. *See People v. Harlan,* 8 P.3d 448 (Colo.2000); *People v. Gallegos,* 950 P.2d 629 (Colo.App.1997).

As relevant here, § 18–1–704(2), C.R.S. 2003, provides that deadly physical force may be used in self-defense only if (1) the actor reasonably believes a lesser degree of force is inadequate; and (2) the actor has reason-able ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury. *See also People v. Janes, supra.*

At trial, defendant tendered an instruction stating:

A person has a right to defend himself and others against what he reasonably believes to [be] the unlawful assaults and attacks of another. A person may repel force by force.

A person has the right to make decisions and to act upon the circumstances as they reasonably appeared to him at the time, and as those circumstances may have appeared to a reasonable person. A person may act out of apparent necessity, if those perceptions are reasonable, even though the perceived danger does not exist.

In deciding whether or not the Defendant had reasonable grounds for believing that there was imminent danger, you should determine this question from the standpoint of the Defendant at the time he acted, in the circumstances in which he found himself. You must determine whether he acted as a reasonable person in those circumstances.

The Prosecution has the burden [to] prove beyond a reasonable doubt that the defendant acted in an unreasonable manner.

The trial court observed that the prosecution's tendered instruction "tracks the statute and is adequate" and gave it over defendant's objection. The instruction stated:

It is an affirmative defense to the crime of Second Degree Murder that the defendant used deadly physical force because

1. he reasonably believed a lesser degree of force was inadequate, and

2. had reasonable grounds to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving great bodily injury.

We conclude the instruction given was proper and the trial court did not err in rejecting the specific language requested by defendant.

## IV.

Defendant next contends the trial court erred in the manner in which it responded to two jury questions posed during deliberations. Again, we disagree.

■ When a deliberating jury communicates any misunderstanding or confusion relating to a matter of law central to the guilt or innocence of the defendant, the trial court should give an additional or supplemental instruction responding to the jury's inquiry. But no additional instruction is required when the original instructions adequately inform the jury. *Boothe v. People*, 814 P.2d 372 (Colo.1991); *People v. Mendez*, 897 P.2d 868 (Colo.App.1995).

■ It is presumed the jury understood and heeded the trial court's instructions. However, this presumption is rebutted where a jury affirmatively indicates it has a fundamental misunderstanding of an instruction it was given. *Leonardo v. People*, 728 P.2d 1252 (Colo.1986).

### A.

■ The first question submitted to the trial court was:

As it applies to Instruction # 13 [regarding self-defense]:

". . . that the defendant used deadly physical force because he reasonably believed a lesser degree of force was inadequate." Does this apply to all events over time leading up to the shooting, or the moment at which the shooting occurred?

The trial court informed counsel it intended to respond to the jury as follows:

In answer to your question, the Court instructs you that the following language from Instruction No. 13: ". . . that the defendant used deadly physical force because he reasonably believed a lesser degree of force was inadequate," applies to all events over time leading up to the shooting, including the moment at which the shooting occurred.

Defendant agreed the court's response was proper, but now challenges it on appeal. We reject his argument.

Because defendant acceded to the court's response, he is precluded from raising this issue on appeal. *See Horton v. Suthers*, 43 P.3d 611 (Colo.2002). In any event, we conclude the jury's question did not show any misunderstanding or confusion on a matter of law central to defendant's guilt or innocence. The jury merely sought guidance regarding which facts it should consider in determining whether defendant's belief was reasonable.

We thus conclude the trial court did not err in responding to this jury question.

### B.

■ The second question the jury asked the trial court was: "Please clarify further Instruction No. 9, specifically the last paragraph as it defines 'knowingly.' " The trial court responded: "I can only refer you to the instruction. I have no clarification for you."

The record does not contain any discussion concerning this response.

In the original instructions, the jury was given the statutory definition of "knowingly," which adequately informed it about that mental state. *See* § 18–1–501(6), C.R.S.2003; *People v. Dago, supra; People v. Hayward, supra.* No additional instruction was required.

### V.

Finally, defendant contends he was denied his right to a fair trial based on cumulative error. We are not persuaded.

■ A new trial may be ordered when the aggregate effect of numerous formal irregularities denied the defendant a fair trial. However, when, as here, we conclude there is no individual error or when the individual errors do not show an absence of a fair trial, reversal for cumulative error is not justified. *See People v. Carlson*, 72 P.3d 411 (Colo.App. 2003).

Judgment affirmed.

Judge NIETO and Judge PICCONE concur.