18CA2190 Peo v Lewis 11-04-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA2190 El Paso County District Court No. 17CR6486 Honorable Larry E. Schwartz, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Felicia Gail Lewis, Defendant-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE HAWTHORNE* J. Jones and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 4, 2021 Philip J. Weiser, Attorney General, Ryan A. Crane, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Heather N. Wong, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021. 
1 ¶ 1 Defendant, Felicia Gail Lewis, appeals the judgment entered after a jury convicted her of possession of a controlled substance and introducing contraband in the first degree. We affirm. I. Background ¶ 2 Lewis was arrested on an outstanding warrant and taken to El Paso County Criminal Justice Center (CJC). The arresting officer inventoried Lewis’s valuables and clothing. Lewis then removed all her valuables and placed them in a Seal-a-Meal bag. She reviewed the inventory sheet and signed it, verifying the list was an accurate statement of her property. Later she changed into a uniform and placed her clothing in a plastic bag before she was transferred to the housing ward. She returned the plastic bag to the officer and the officer tagged the bag with Lewis’s name and her bag number. ¶ 3 Hours after Lewis was booked and transferred, the midnight shift intake and property technician completed a head count of the individuals in the waiting area and matched them with each property bag not on the conveyor. When he got to Lewis’s bag, which was not on the conveyor, the bag was not listed on his head count sheet. On opening the bag, a small lip balm container fell out of the bag that was not listed on Lewis’s inventory sheet. The 
2 technician continued to look through the clothing in the bag to verify whether the bag belonged to Lewis. The clothing items matched the items listed on the inventory sheet and the shirt matched the one Lewis was wearing in her booking photo. He then opened the lip balm container and saw a crystalline substance. ¶ 4 The technician showed the lip balm container and the substance to Deputy Robert Kirkham, who suspected that the substance was methamphetamine. Deputy Kirkham entered the suspected methamphetamine into evidence, sealed it in a manila envelope with red tape, and sent it by courier for testing. The substance tested positive for methamphetamine. ¶ 5 The State charged Lewis with one count of possession of a controlled substance and one count of introducing contraband in the first degree. At trial, defense counsel contended that the only evidence tying the methamphetamine to Lewis was that it fell out of her property bag. He argued the methamphetamine did not belong to Lewis because officers did not find the lip balm container when searching her at the time of her arrest and during the intake procedures. Also, none of the witnesses who testified at trial had 
3 direct contact with Lewis at CJC. The jury disagreed with that evidence and convicted Lewis of both counts. II. Jury Poll ¶ 6 Lewis first contends the trial court erroneously declined to poll the jury after defense counsel made a timely request for a jury poll. She further contends that this error requires reversal. We perceive no reversible error. A. Additional Facts ¶ 7 After closing arguments, the jury began deliberating at 4:35 p.m. and the trial court instructed the jury that if it did not reach a verdict by 5:00 p.m., the jurors would reconvene the following morning. ¶ 8 The jury deliberated until 5:20 p.m. and returned guilty verdicts on both counts. The trial court asked the foreperson if the verdict accurately reflected the verdict of each juror and the foreperson said, “Yes, Your Honor.” The court then read the discharge instructions. But, before the jury was dismissed, the following colloquy occurred: [Defense]: Judge, I’m sorry, can we poll the jury? 
4 [Court]: I don’t think we need to. [Defense]: Okay. [Court]: So, no. You’re excused. Thank you. B. Standard of Review and Applicable Law ¶ 9 The interpretation of the Colorado Rules of Criminal Procedure is a question of law that we review de novo. People v. Steen, 2014 CO 9, ¶ 9. ¶ 10 A defendant has a constitutional and statutory right to a unanimous verdict. U.S. Const. amend. VI; § 16-10-108, C.R.S. 2021; see also Ramos v. Louisiana, 590 U.S. ___, ___, 140 S. Ct. 1390, 1397 (2020) (“There can be no question either that the Sixth Amendment’s unanimity requirement applies to state and federal criminal trials equally.”). “Unanimity requires a deliberative process that expresses the conscientious conviction of each individual juror.” People v. Phillips, 91 P.3d 476, 479 (Colo. App. 2004). And the trial court is responsible for ensuring that a conviction is the result of a unanimous verdict. People v. Rivera, 56 P.3d 1155, 1160-61 (Colo. App. 2002); see also § 16-10-108; Crim. P. 23(a)(8), 31(a)(3). ¶ 11 Under Crim. P. 31(d), 
5 [w]hen a verdict is returned and before it is recorded, the jury shall be polled at the request of any party or upon the court’s own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged. ¶ 12 Although Crim. P. 31(d) implements the right to unanimity, People v. Auman, 67 P.3d 741, 767 (Colo. App. 2002), rev’d on other grounds, 109 P.3d 647 (Colo. 2005), the right to poll the jury is not itself a constitutional right, United States v. Tucker, 596 F. App’x 616, 618 (10th Cir. 2014). Instead, it is a procedural right derived from the Colorado Rules of Criminal Procedure, and failing to poll the jury under Crim. P. 31(d) is therefore a trial error. See People v. Miller, 113 P.3d 743, 749 (Colo. 2005) (identifying trial errors as errors in the trial process itself). Our supreme court has “made clear that reversal for trial error, based solely on the significance, or substantiality, of the affected right, can no longer be sustained.” People v. Novotny, 2014 CO 18, ¶ 26. And automatic reversal is inappropriate absent structural error. Id. at ¶ 27; see also Phillips, 91 P.3d at 479 (declining to apply a structural error analysis to the trial court’s failure to poll one of the jurors). Thus, we review a trial court’s denial of a request to poll the jury for nonconstitutional 
6 harmless error. Hagos v. People, 2012 CO 63, ¶ 12 (“[W]e review nonconstitutional trial errors that were preserved by objection for harmless error.”). Under this standard, we reverse only if the error “substantially influenced the verdict or affected the fairness of the trial proceedings.” Id. (quoting Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986)). C. Analysis ¶ 13 Assuming, without deciding, that defense counsel’s request to poll the jury was timely, the court erred by failing to conduct a poll. But we conclude that reversal is not required because the error was harmless. ¶ 14 The trial court instructed the jury on unanimity and the foreperson confirmed that the verdict accurately reflected each juror’s verdict. And the record does not reveal any evidence that the verdict lacked unanimity. Absent any contrary evidence, we presume the jury understood and followed the court’s unanimity instruction. See People v. Butler, 224 P.3d 380, 387 (Colo. App. 2009). So we perceive no substantial influence on the verdict or effect on the trial proceedings’ fairness requiring us to reverse. 
7 III. Sufficiency ¶ 15 Lewis next contends there was insufficient evidence that she knowingly and unlawfully possessed the methamphetamine that was introduced into CJC. We disagree. A. Standard of Review and Applicable Law ¶ 16 In assessing the sufficiency of the evidence to support a conviction, we review the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt. People v. Perez, 2016 CO 12, ¶ 8. ¶ 17 In making this determination, we recognize that “it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence.” People v. Gibson, 203 P.3d 571, 575 (Colo. App. 2008) (quoting People v. Brassfield, 652 P.2d 588, 592 (Colo. 1982)). An appellate court does not sit as a thirteenth juror to reassess witness credibility or to reweigh the evidence presented to the jury. Id. As well, “we must give the prosecution the benefit of every reasonable inference which 
8 may be fairly drawn from the evidence.” Clark v. People, 232 P.3d 1287, 1292 (Colo. 2010). ¶ 18 As relevant here, “it is unlawful for a person knowingly to possess a controlled substance.” § 18-18-403.5(1), C.R.S. 2021. And a person commits introducing contraband in the first degree if she knowingly and unlawfully . . . [i]ntroduces or attempts to introduce a . . . controlled substance . . . into a detention facility or at any location where an inmate is or is likely to be located, while the inmate is in the custody and under the jurisdiction of a political subdivision of the state of Colorado or the department of corrections, but not on parole. § 18-8-203(1)(a), C.R.S. 2021. A person acts “knowingly” “with respect to conduct or to a circumstance described by a statute defining an offense when [s]he is aware that [her] conduct is of such nature or that such circumstance exists.” § 18-1-501(6), C.R.S. 2021. ¶ 19 A defendant’s mental state can be proven by circumstantial evidence rather than direct evidence. People v. Collie, 995 P.2d 765, 773 (Colo. App. 1999) (“Evidence of a defendant’s intent can ‘rarely be proven other than by circumstantial or indirect evidence.’” 
9 (quoting People v. Valenzuela, 825 P.2d 1015, 1016 (Colo. App. 1991))). And “‘[a] defendant’s mental state may be inferred from his or her conduct and other evidence,’ including the circumstances surrounding the commission of the crime.” People v. Grant, 174 P.3d 798, 812 (Colo. App. 2007) (citations omitted). B. Analysis ¶ 20 Lewis contends that there was insufficient evidence that she “knowingly” possessed and introduced the lip balm container containing methamphetamine because it was not found on her person during multiple searches and because none of the testifying witnesses had any direct contact with her at CJC. ¶ 21 We conclude that the prosecution presented sufficient evidence of Lewis’s knowledge based on the following evidence: • Testimony about the intake protocol and the proper procedures for inventorying a person’s property. • The inventory sheets completed by the arresting officer and signed by Lewis, verifying the inventory list was an accurate description of her property. 
10 • Testimony that the lip balm container holding methamphetamine fell out of the property bag tagged with Lewis’s name. • Testimony that the technician verified that the property bag belonged to Lewis by matching the clothing items in the bag to the items listed on Lewis’s signed inventory sheet. • Testimony that the shirt in the property bag matched the shirt Lewis was wearing in her booking photo. ¶ 22 Lewis, however, argues that there was compelling evidence that the lip balm container was placed in Lewis’s property bag by someone else because her property bag was left in an unsecure area for several hours before the technician opened the bag and found the lip balm container. This argument fails. The prosecution need not “exclude every reasonable hypotheses other than that of guilt” or disprove the defendant’s theory. Clark, 232 P.3d at 1292 (quoting People v. Bennett, 183 Colo. 125, 131, 515 P.2d 466, 469 (1973)). We will not set aside a conviction merely because a different conclusion might be drawn from the evidence or because 
11 there is evidence supporting a contrary finding. See People v. Tumbarello, 623 P.2d 46, 49 (Colo. 1981). ¶ 23 Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury could have reasonably determined beyond a reasonable doubt that Lewis committed possession of a controlled substance and introducing contraband in the first degree. IV. Prosecutorial Misconduct ¶ 24 Lewis contends that her convictions must be reversed because the prosecutor “inappropriately trivialized the state’s burden” during voir dire and closing arguments by using a Mickey Mouse analogy to explain the burden of proof. And she argues that the prosecutor further “diluted the burden of proof” by implying that a reasonable doubt must be a likely doubt, and that the jury could convict by finding “the prosecution theory ‘more likely’ than the defense theory.” We discern no reversible error. A. Additional Facts ¶ 25 Before voir dire, the court instructed the jury that the prosecution had to prove each element of the crimes charged 
12 beyond a reasonable doubt. The court then accurately defined reasonable doubt for the jury.
1 ¶ 26 During voir dire, the prosecutor engaged in the following colloquy with the prospective jurors: [Prosecutor]: [Juror 7], that object right there, the stars and stripes, what is that? . . . . [Juror 7]: Yeah it’s our flag. [Prosecutor]: Okay are you certain that that’s our American flag beyond a reasonable doubt? [Juror 7]: Yes. [Prosecutor]: Okay. How do you know that? [Juror 7]: Well, I trust the Judge wouldn’t have that flag in here if it wasn’t our American flag. [Prosecutor]: Okay. So maybe the surrounding circumstances of where you are and who’s around? 1 The court said, Reasonable doubt means a doubt based upon reason and common sense, which arises from a fair and rational consideration of all of the evidence or the lack of evidence in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves. 
13 [Juror 7]: Yes. [Prosecutor]: What if I were to tell you that there is a Mickey Mouse on the back of the flag? . . . [D]id I convince you beyond a reasonable doubt that there is no Mickey Mouse on the back of that flag? [Juror 7]: No. [Prosecutor]: Okay. Why not? [Juror 7]: You haven’t convinced me of anything. [Prosecutor]: Just by saying it? [Juror 7]: Yeah. [Prosecutor]: Okay. Have I convinced you beyond a reasonable doubt that it’s still an American flag, there’s no Mickey Mouse on the back of that flag? [Juror 7]: Well, I see it so it’s an American flag. Whatever you say, I know it’s an American flag. [Prosecutor]: That’s true. But it’s not stretched out. You can’t see the back of that flag, right? [Juror 7]: Right. [Prosecutor]: So could there be a Mickey Mouse on the back of that flag? [Juror 7]: There could be. [Prosecutor]: Do you think it’s reasonably likely that there is one? 
14 [Juror 7]: No. [Prosecutor]: Why not? [Juror 7]: Well, I guess because I’ve never heard of Mickey Mouse being on the back of the flag. [Prosecutor]: Sure. Sure. That’s a fair point. [Juror 13] what do you think about that? You don’t see it, I haven’t stretched it out, you can’t see the back of that. Do you still think beyond a reasonable doubt no Mickey Mouse? [Juror 13]: Yeah, unless I see it, I don’t know. [Prosecutor]: Unless you see it you don’t know. Now, so that’s where I was kinda getting with that. There is a difference between reasonable doubt and beyond all doubt, right? You can’t see on the back of that, and I’m not . . . going to be able to put you in that place at that time so that you can see everything, right? You have to rely on what other people see, the evidence that I show you. So do you think that it’s possible for me to convince you that there’s no Mickey Mouse on the back of that flag beyond a reasonable doubt without showing it to you? [Juror 13]: Well, science guy. Like, I want that hard evidence. [Prosecutor]: Right. Right. And, you know, that’s fair for you to want more than just my word or something like that, but are you able to . . . like [Juror 7] was saying, think of your surroundings and, you know, she trusts that the Judge wouldn’t have that, that sort of 
15 thing. Do you see what I’m getting at? I know it’s kind of a silly example. [Juror 13]: Yes. Yes. ¶ 27 The prosecutor then questioned each of the remaining prospective jurors, asking whether they could hold her to the beyond a reasonable doubt standard rather than a beyond all doubt standard using the same Mickey Mouse analogy. At one point, the prosecutor referred to the difference as “likely versus possible.” Defense counsel did not object. ¶ 28 At the close of evidence, the court again instructed the jury on the burden of proof, explaining that the prosecution had the burden to prove beyond a reasonable doubt all elements of the crimes charged and providing the same accurate definition of beyond a reasonable doubt that it had read aloud to the prospective jurors before voir dire. It also instructed the jury that it must apply the rules of law the court decided applied to the case and that while “attorneys may comment on some of these rules,” the jury was to follow the court’s instructions. 
16 ¶ 29 During rebuttal closing argument, the prosecutor responded to defense counsel’s argument about the beyond a reasonable doubt standard by referencing the Mickey Mouse analogy: And I want to bring you back to the Mickey Mouse, because I know it’s a silly example, but think about what is possible versus what is likely. Is it possible that someone else dropped the methamphetamine in her bag? Sure. Is it likely? No. Is it more likely that she had those drugs, and while she was changing she put those drugs into her bag hoping that no one would notice? That’s what is likely. That is what is reasonable. ¶ 30 Defense counsel did not object. B. Standard of Review and Applicable Law ¶ 31 We review claims of prosecutorial misconduct using a two-step analysis. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor’s conduct was improper based on the totality of the circumstances. Id. If so, we determine whether such conduct warrants reversal under the proper standard of review. Id. ¶ 32 While a prosecutor can use every legitimate means to bring about a just conviction, she has a duty to avoid using improper methods intended to obtain an unjust result. Domingo-Gomez v. 
17 People, 125 P.3d 1043, 1048 (Colo. 2005). A prosecutor may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom. People v. McMinn, 2013 COA 94, ¶ 61. She may also employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance. Id. A prosecutor may not, however, misstate or misinterpret the law. Id. at ¶ 62. ¶ 33 When determining whether a prosecutor’s statements were improper and whether reversal is warranted, we may consider the language used, the context of the statements, the strength of the evidence, whether the prosecutor improperly appealed to the jurors’ sentiments, whether the misconduct was repeated, and any other relevant factors. People v. Walters, 148 P.3d 331, 335 (Colo. App. 2006). And we may consider a lack of contemporaneous objection by the defendant’s counsel as demonstrating her belief “that the live argument, despite its appearance in a cold record, was not overly damaging.” Domingo-Gomez, 125 P.3d at 1054. ¶ 34 Defense counsel did not object to the prosecutor’s Mickey Mouse analogy, so we review this claim for plain error. Hagos, ¶ 14. For an error to be plain, it must be obvious and substantial. 
18 Id. An obvious error is one that contravenes a statute or rule, a well-settled legal principle, or established Colorado case law. See Campbell v. People, 2020 CO 49, ¶ 25. ¶ 35 “To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.” McMinn, ¶ 58. Prosecutorial misconduct rarely constitutes plain error. People v. Estes, 2012 COA 41, ¶ 19. C. Analysis ¶ 36 Lewis contends that the prosecutor’s use of the American flag and Mickey Mouse to describe the beyond a reasonable doubt standard constituted prosecutorial misconduct because it lowered the prosecution’s burden of proof. We see no plain error. ¶ 37 Divisions of our court have increasingly disapproved the use of analogies — by the court and by the prosecution — to explain the beyond a reasonable doubt standard. See People v. Tibbels, 2019 COA 175, ¶ 33 (cert. granted June 29, 2020) (“[T]wenty-two decisions of this court, both published and unpublished, have repeatedly discouraged trial courts’ use of illustrations to explain 
19 reasonable doubt, the presumption of innocence, and other legal concepts.”). And a prosecutor’s use of iconic images to explain the burden of proof risks trivializing reasonable doubt, thereby lowering the burden of proof. See People v. Vialpando, 2020 COA 42, ¶¶ 55-
56 (cert. granted Oct. 12, 2020) (“The danger is that, by using iconic, easily recognizable images, the jury may conclude that guilt beyond a reasonable doubt is easy to determine and, thus, that the reasonable doubt standard is a low burden of proof.”); People v. Van Meter, 2018 COA 13, ¶ 31 (“[T]he prosecutor’s use of a puzzle analogy, including the display of an incomplete puzzle of the iconic and easily recognizable space shuttle image, was improper.”); People v. Camarigg, 2017 COA 115M, ¶ 47 (“[P]uzzle analogies are problematic if they use iconic images, which invite the jury to jump to a conclusion about a defendant’s guilt.”). ¶ 38 The prosecutor here acknowledged that the analogy was “silly,” and used two iconic images — the American flag and Mickey Mouse — to describe the difference between beyond a reasonable doubt and beyond all doubt. The analogy related to the burden of proof, suggesting that reasonable doubt is easy to determine. Indeed, Juror 7 told the prosecutor that regardless of what the 
20 prosecutor said, she knew the object was an American flag. And, based on their courtroom surroundings, the remaining jurors agreed that it was unlikely that a Mickey Mouse was on the back of the flag. ¶ 39 We conclude that the court did not plainly err. The prosecutor did not use the Mickey Mouse analogy to improperly quantify or trivialize the prosecution’s burden of proof. See Camarigg, at ¶ 50. Instead, the prosecutor used the analogy to emphasize the difference between beyond a reasonable doubt and beyond all doubt. Also, the trial court instructed the jury multiple times on the proper meaning of “reasonable doubt” and the prosecution’s burden to prove each element of the charges beyond a reasonable doubt. See People v. McKeel, 246 P.3d 638, 641 (Colo. 2010) (“We presume that jurors follow the instructions that they receive.”). The jury never indicated any confusion about the prosecution’s burden of proof. And defense counsel did not object to the prosecutor repeatedly using the analogy. See Domingo-Gomez, 125 P.3d at 1054. For the same reasons, we discern no plain error as to the prosecutor’s comment that it was “more likely” that Lewis put the 
21 methamphetamine in her property bag when she was changing versus someone planting the drugs in her bag. ¶ 40 We conclude that the challenged conduct did not “so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.” McMinn, ¶ 58. Under these circumstances, we discern no plain error. V. Authentication/Chain of Custody ¶ 41 Lewis contends that the trial court erred by admitting the sealed manila envelope containing the lip balm container and methamphetamine. Specifically, she argues that the prosecution failed to establish a chain of custody from the time Deputy Kirkham entered the envelope containing the methamphetamine into evidence to the time the forensic chemist retrieved the envelope from the intake box at the lab. We are unpersuaded. A. Additional Facts ¶ 42 During direct examination, Deputy Kirkham identified a manila envelope sealed with red tape and with the case number and his initials written on it as the manila envelope he entered into evidence containing the lip balm container with methamphetamine inside. The prosecutor moved to admit the envelope and defense 
22 counsel objected on grounds of lack of foundation and lack of chain of custody, arguing, With this case, there’s been no testimony about the initial deputy searching Miss Lewis’[s] property, him finding any type of lip balm, and therefore the property that he’s looking at, there’s no indication as to whether or not that property was presented to Miss Lewis as the evidence in the exhibit that [the prosecution] has already introduced. There is no indication on Miss Lewis’[s] property sheet that a lip balm was in her property; therefore, we’d object to the admission. ¶ 43 The trial court overruled the objection, reasoning that a foundation had been laid through the technician’s prior testimony. Deputy Kirkham then identified the lip balm container in the envelope as the container he received from the property technician. ¶ 44 The forensic chemist later identified the sealed manila envelope as the envelope he retrieved from the lab’s intake box for testing and identified the methamphetamine in the lip balm container as the substance he tested. He noted his forensic marks on the front and back of the envelope. He explained that the envelope was delivered via courier from the county sheriff’s office and the lab took custody of the envelope, placing it in the intake box. 
23 B. Preservation and Standard of Review ¶ 45 As an initial matter, the parties dispute whether Lewis preserved this issue for appeal. An objection to a “lack of foundation” is insufficient to preserve a chain of custody issue for review. See People v. Richardson, 181 P.3d 340, 347 (Colo. App. 2007). Because Lewis did not challenge the envelope’s chain of custody from the time it left the county sheriff’s office by courier to the time it was placed into the intake box at the lab at trial, we agree with the People that this issue is not preserved and review it for plain error. See People v. Ujaama, 2012 COA 36, ¶ 37. ¶ 46 We review a trial court’s decision to admit evidence for an abuse of discretion. Richardson, 181 P.3d at 347. A court abuses its discretion if its decision was manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. People v. Payne, 2019 COA 167, ¶ 5. C. Analysis ¶ 47 “The chain of custody rule requires that the proponent of real evidence establish that the evidence was involved in the incident and that the condition of the evidence at trial is substantially unchanged.” People v. Mascarenas, 666 P.2d 101, 112 (Colo. 1983). 
24 ¶ 48 The methamphetamine in this case was admitted through Deputy Kirkham, the officer who logged the drugs into evidence and sealed the envelope. Despite the lack of testimony from the individuals involved in delivering the envelope to the lab, the evidence showed that the envelope received by the forensic chemist was sealed with the red tape Deputy Kirkham used to seal it and the envelope had Deputy Kirkham’s and the forensic chemist’s handwritten markings on it. And Deputy Kirkham identified the lip balm container containing methamphetamine as the container he placed in the envelope for testing and the forensic chemist identified the same container and substance as the one he received in the envelope and tested. Thus, the chain of custody was sufficiently established ¶ 49 We further conclude that that the alleged deficiencies in the chain of custody impacted the weight of the evidence, not its admissibility. See People in Interest of T.B., 2016 COA 151M, ¶ 28 (“Any purported deficiencies in the chain of custody, such as a lack of clarity about which police officer had made the copies of the photographs from the juvenile’s cell phone, went to the weight that 
25 the trial court gave the photographs, not to their admissibility.”); Richardson, 181 P.3d at 347. ¶ 50 So we perceive no error, much less plain error. VI. Merger ¶ 51 Lewis last contends that the trial court erred by failing to merge her possession of a controlled substance and introducing contraband in the first degree convictions because possession of a controlled substance is a lesser included offense of introducing contraband. Thus, she argues her conviction on both counts violates her double jeopardy right. ¶ 52 We review de novo whether a conviction violates a defendant’s right to be free from double jeopardy. People v. Welborne, 2018 COA 127, ¶ 7. However, because Lewis did not preserve this issue, we will reverse only if plain error occurred. Reyna-Abarca v. People, 2017 CO 15, ¶ 2. ¶ 53 Pursuant to constitutional double jeopardy protections, a defendant may not receive multiple punishments for the same offense unless such punishments are authorized by the General Assembly. Welborne, ¶ 8. In Colorado, the General Assembly has determined that a defendant may not be convicted of two different 
26 offenses if one offense is a lesser included offense of the other. § 18-1-408(1)(a), C.R.S. 2021. Under the strict elements test, one offense is included in another charged offense when “[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged.” § 18-1-
408(5)(a); see also Reyna-Abarca, ¶ 51. ¶ 54 Our supreme court has interpreted section 18-1-408(5)(a) to provide two ways that an offense may be lesser included in another. Welborne, ¶¶ 11-12. First, “an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense.” Reyna-Abarca, ¶ 64. Second, “[a]n offense can also be included in another under the statutory elements test when there are multiple ways to commit the lesser, not all of which are included within the greater.” Page v. People, 2017 CO 88, ¶ 11 (citing People v. Rock, 2017 CO 84). ¶ 55 In People v. Etchells, a division of this court considered whether possession of less than one ounce of marijuana is a lesser included offense of introducing contraband. 646 P.2d 950, 951 
27 (Colo. App. 1982). Applying the test in People v. Rivera, 186 Colo. 24, 525 P.2d 431 (1974), the division concluded that the offense is not lesser included because proof of possession is not an essential element to the crime of introducing contraband. Etchells, 646 P.2d at 952. Lewis contends, however, that under the supreme court’s subsequent decisions in Reyna-Abarca and Page, possession of a controlled substance is lesser included because proof of possession is at least one way of committing introduction of contraband. We are unpersuaded. ¶ 56 A person commits the offense of introduction of contraband in the first degree when she knowingly introduces or attempts to introduce a controlled substance into a detention facility. § 18-8-
203(1)(a). And possession of a controlled substance is committed only when a person knowingly possesses a controlled substance. § 18-18-403.5(1), (2)(a). Because possession of a controlled substance cannot be committed in multiple ways, we apply the test in Reyna-Abarca. ¶ 57 In People v. Jamison, 2018 COA 121, ¶ 50, a division of this court, applying the Reyna-Abarca test, held that first degree possession of contraband is a lesser included offense of 
28 introduction of contraband by making, § 18-8-203(1)(b). The division distinguished introduction of contraband by making under subsection 203(1)(b) and introducing or attempting to introduce contraband under subsection 203(1)(a). Id. at ¶ 58. It concluded that unlike introduction of contraband by making under subsection 203(1)(b) where “making necessarily establishes possession,” id. at ¶ 49, introduction of contraband under subsection 203(1)(a) can be committed without a defendant possessing the contraband, id. at ¶ 58 (“By way of example, a person could commit introducing contraband under subsection 203(1)(a) without also committing possession of contraband by asking someone to mail contraband to a detention facility.”). Because we agree and conclude that proof of introducing or attempting to introduce contraband does not necessarily establish possession, possession of a controlled substance is not a lesser included offense of introduction of contraband in the first degree under subsection 203(1)(a). See, e.g., People v. Kern, 2020 COA 96, ¶ 34 (holding littering is not a lesser included offense of throwing a missile at a vehicle because “a person can commit the throwing a missile offense without also committing the littering offense”). 
29 ¶ 58 Accordingly, Lewis’s possession of a controlled substance conviction does not merge into her introducing contraband in the first degree conviction. VII. Conclusion ¶ 59 The judgment is affirmed. JUDGE J. JONES and JUDGE TOW concur.